PAE AO 241
(Rev. 10/09)

Page 4

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):** <br><br> GERALD WATERS | **Docket or Case No.:** <br><br> CP-51-CR-0308691-2006 |
| **Place of Confinement:** <br> SCI FOREST | **Prisoner No.:** <br><br> HR-4666 |
| **Petitioner** (include the name under which you were convicted): <br><br><br> GERALD WATERS   **V.** | **Respondent** (authorized person having custody of petitioner): <br><br> RANDY IRWIN, Superintendent SCI Forest, <br> AND <br> PA DEPARTMENT OF CORRECTIONS. |
| **The Attorney General of the State of** PENNSYLVANIA | |

### PETITION

1.  (a)  Name and location of court that entered the judgment of conviction you are challenging:
    Court of Common Pleas Philadelphia County, 1301 Filbert
    Street, Philadelphia PA. 19107.

    (b)  Criminal docket or case number (if you know): CP-51-CR-0308691-2006

2.  (a)  Date of judgment of conviction (if you know): July 25, 2008

    (b)  Date of sentencing: July 25, 2008

3.  Length of sentence: Life, plus 20-40 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: 1st Degree Murder,
    Conspiracy, Possession of instrument of Crime.

PAE AO 241
(Rev. 10/09)

6.  (a)  What was your plea?  (Check one)

☒ (1)  Not Guilty          ☐ (3)  Nolo contendere (no contest)

☐ (2)  Guilty              ☐ (4)  Insanity plea

(b)  If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?  Plead not guilty 1st degree murder, conspiracy, and possession of instrument of crime.

(c)  If you went to trial, what kind of trial did you have?  (Check one)

☒  Jury          ☐  Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐  Yes          ☒  No

8.  Did you appeal from the judgment of conviction?

☒  Yes          ☐  No

9.  If you did appeal, answer the following:

(a)  Name of court: Superior Court of Pennsylvania

(b)  Docket or case number (if you know): 2819 EDA 2008

(c)  Result: Conviction and sentence was upheld

(d)  Date of result (if you know): April 7, 2011

(e)  Citation to the case (if you know): N/A

(f)  Grounds raised: N/A

(g)  Did you seek further review by a higher state court?          ☒  Yes          ☐  No

If yes, answer the following:

PAE AO 241
(Rev. 10/09)

(1) Name of court: __Supreme Court of Pennsylvania__

(2) Docket or case number (if you know): __249 EDA 2011__

(3) Result: __Petition for Allowance of Appeal was DENIED.__

(4) Date of result (if you know): __February 9, 2012__

(5) Citation to the case (if you know): __None__

(6) Grounds raised: __N/A__

_____

_____

_____

_____

(h)    Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): __N/A__

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☒ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: __Court of Common Pleas, Philadelphia__

(2) Docket or case number (if you know): __CP-51-CR-0308691-2006__

(3) Date of filing (if you know): __July 20, 2012, Amended Sept. 26, 2017__

(4) Nature of the proceeding: __Post Conviction Relief Act Petition__

(5) Grounds raised: __Trial Counsel was Ineffective for failing to object to the Trial Court's instruction on reason-able doubt where the Court unconstitutionally elevated the level of doubt necessary to secure an acquittal. ii) Trial Counsel was ineffective for his inadvertence and/or ignorance of exculpatory impeachment evidence in violation of the discovery rule and petitioner's due process rights under the 14th Amendment. iii) Trial Counsel was ineffective for failing to object to the presiding jurist cumulative abuses of discretion or seek disqualification and recusal due to impartiality during Trial.__

PAE AO 241
(Rev. 10/09)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☒ Yes        ☐ No

(7) Result: Post Conviction Relief Act Petition DENIED.

(8) Date of result (if you know): October 7, 2019

(b)    If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Superior Court of Pennsylvania

(2) Docket or case number (if you know): 3150 EDA 2019

(3) Date of filing (if you know): October 20, 2019

(4) Nature of the proceeding: Notice of Appeal

(5) Grounds raised: i) The PCRA Court erred in making a Manifest Un—
reasonable decision to dismiss [A]ppellant's PCRA claim that
trial counsel was ineffective for failing to object to the trial
court's jury instruction on reasonable doubt where the trial
court unconstitutionally elevated the level of doubt necessary
to secure an acquittal, ii) The PCRA Court erred in making an
objectively unreasonable decision to dismiss [A]ppellant's PCRA
claim that trial counsel was ineffective for his inadvertence
and/or ignorance of the exculpatory local government issue (Cont.)
(see attached)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes        ☒ No

(7) Result: Superior Court upheld the Common Pleas denial Order

(8) Date of result (if you know): March 5, 2021

(c)    If you filed any third petition, application, or motion, give the same information:

(1) Name of court: Supreme Court of Pennsylvania

(2) Docket or case number (if you know): 280 EAL 2021

(3) Date of filing (if you know): May 23, 2021

(4) Nature of the proceeding: Petition for Allowance of Appeal

(5) Grounds raised: (i) Whether the Superior Court erred in sustaining
the PCRA court's manifest unreasonable decision to dismiss
Appellant's PCRA claim that trial counsel was ineffective for
failing to object to the trial court's jury instruction on
reasonable doubt where the trial court unconstitutionally

PAE AO 241
(Rev. 10/09)

elevated the level of doubt necessary to secure an acquittal.

(ii) Whether the Superior Court erred in sustaining the PCRA

court's manifest unreasonable decision to dismiss Appellant's

PCRA claim that trial counsel was ineffective for his ignorance
(Continued on attached page)...

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes          ☒ No

(7) Result: _PA Supreme Court denied Petition for Allowance of Appeal._

(8) Date of result (if you know): _March 15, 2023_

(d)    Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1)    First petition:        ☒ Yes          ☐ No
(2)    Second petition:    ☒ Yes          ☐ No
(3)    Third petition:       ☒ Yes          ☐ No

(e)    If you did not appeal to the highest state court having jurisdiction, explain why you did not:
N/A

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** _Trial counsel was ineffective for failing to object to_
_the trial court's jury instruction on reasonable doubt where the trial_
(Continued on attached page)
(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
_During petitioner's trial, the trial court used a hypothetical jury_
_instruction that asked the jury to use their personal life as a_
_model for their decision making process. Further asking the jury to_
_imagine their child having a life threatening illness, and the only_
_protocol to save his life was surgery. The jury instruction equated_
_surgical treatment with resolving reasonable doubt._ No objections made.

(b) If you did not exhaust your state remedies on Ground One, explain why: **N/A**

(c) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☒   Yes        ☐   No

    (2) If you did not raise this issue in your direct appeal, explain why? **N/A**

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒   Yes        ☐   No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: Post Conviction Relief Act Petition

    Name and location of the court where the motion or petition was filed: Court of Common Pleas, Philadelphia, 1301 Filbert St., PA. 19107

    Docket or case number (if you know): CP-51-CR-0308691-2006

    Date of the court's decision: October 7, 2019

    Result (attach a copy of the court's opinion or order, if available): Petition denied, Opinion signed April 14, 2020; filed May 27, 2020 by Judge Charles A. Ehrlich. Opinion attached.

    (3) Did you receive a hearing on your motion or petition?   ☒ Yes   ☐ No

    (4) Did you appeal from the denial of your motion or petition?   ☒ Yes   ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        ☒   Yes        ☐   No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: Superior Court of Pennsylvania, 530 Walnut Street, Phila. PA. 19102

    Docket or case number (if you know): 3150 EDA 2019

    Date of the court's decision: March 5, 2021

PAE AO 241
(Rev. 10/09)

Result (attach a copy of the court's opinion or order, if available): The Superior Court upheld the Common Pleas denial Order of Post Conviction Relief.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: On March 15, 2021, petitioner sought reconsideration of Superior Court's denial Order of March 5, 2021 unsuccessfully.

**GROUND TWO:** Trial counsel was ineffective for his inadvertence and/or ignorance of exculpatory impeachment evidence in violation of the (Cont...)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Prosecution withheld evidence, a firearm belonging to a Philadelphia Police Officer, that was found by investigators before trial. The evidence would have prevalent to guilt and punishment whereas defense counsel expressed during trial that there was no gun found anywhere. The murder weapon's serial number and ballistics were connect to this homicide whereas, the ADA, during appeal, down-played the physical evidence in this circumstantial case. Witnesses were omitted as a result.

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☒ Yes            ☐ No

PAE AO 241
(Rev. 10/09)

(2) If you did not raise this issue in your direct appeal, explain why? __N/A__

_____

_____

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: __Post Conviction Relief Act Petition__

Name and location of the court where the motion or petition was filed: __Court of Common Pleas, Philadelphia, 1301 Filbert St., PA. 19107__

Docket or case number (if you know): __Cp-51-CR-0308691-2006__

Date of the court's decision: __October 7, 2019__

Result (attach a copy of the court's opinion or order, if available): __Petition denied, Opinion signed April 14, 2020; filed May 27, 2020 by Judge Charles A. Ehrlich. Opinion attached__

(3) Did you receive a hearing on your motion or petition?          ☒ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __Superior Court of Pennsylvania, 530 Walnut Street, Philadelphia. PA 19102__

Docket or case number (if you know): __3150 EDA 2019__

Date of the court's decision: __March 5, 2021__

Result (attach a copy of the court's opinion or order, if available): __The Superior Court upheld the Common Pleas denial Order of Post Conviction Relief.__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/A__

_____

_____

_____

PAE AO 241
(Rev. 10/09)

    (e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: <u>On March 15,</u> <u>2021, petitioner sought reconsideration of Superior</u> <u>Court's denial Order of March 5, 2021 unsuccessfully.</u>

**GROUND THREE:** <u>Trial counsel was ineffective in failing to object to</u> <u>the trial court's cumulative abuses of discretion; mis-application of</u> (Continued on attached page...)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

<u>During trial, defense counsel failed to object to the trial judge's</u> <u>interference in testimony by witnesses who testified in petitioner's</u> <u>favor. Not objecting to the judge's offer to the prosecution to help</u> <u>prosecute; including, making up case law to justify allowing the ADA</u> <u>to lead it's witness in testimony. Counsel made no objection to the</u> <u>court's on record directive to the ADA to get rid of objections to</u> <u>taped minor testimony, altering the transcript in favor of prosecution.</u>

(b) If you did not exhaust your state remedies on Ground Three, explain why: <u>N/A</u>

(c) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☒ Yes        ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why? <u>N/A</u>

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes        ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: <u>Post Conviction Relief Act Petition</u>

PAE AO 241
(Rev. 10/09)

Name and location of the court where the motion or petition was filed: Court of Common Pleas, Philadelphia, 1301 Filbert St., PA. 19107

Docket or case number (if you know): CP-51-CR-0308691-2006

Date of the court's decision: October 7, 2019

Result (attach a copy of the court's opinion or order, if available): Petition denied, Opinion signed April 14, 2020; filed May, 27, 2020 by Judge Charles A. Ehrlich. Opinion attached.

(3) Did you receive a hearing on your motion or petition?      ☒ Yes      ☐ No

(4) Did you appeal from the denial of your motion or petition?      ☒ Yes      ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania, 530 Walnut Street, Phila. PA. 19102

Docket or case number (if you know): 3150 EDA 2019

Date of the court's decision: March 5, 2021

Result (attach a copy of the court's opinion or order, if available): The Superior Court upheld the Common Pleas denial Order of Post Conviction Relief.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: On March 15, 2021, petitioner sought reconsideration of Superior Court's denial Order of March 5, 2021 unsuccessfully.

**GROUND FOUR:** N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

PAE AO 241
(Rev. 10/09)

N/A
_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____ N/A _____
_____
_____
_____
_____
_____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☐ Yes        ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why? _____ N/A _____
_____
_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes        ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____ N/A _____

    Name and location of the court where the motion or petition was filed: _____
_____

    Docket or case number (if you know): __ N/A _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____ N/A _____
_____
_____

    (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No

    (4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐    Yes        ☐    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is  "No," explain why you did not raise

this issue: _____ N/A _____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.)  that you have used to exhaust your state remedies on Ground Four: _____ N/A _____

_____

_____

_____

_____

_____

_____

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state

court having jurisdiction?            ☒  Yes        ☐  No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for

not presenting them: _____ N/A _____

_____

_____

_____

PAE AO 241
(Rev. 10/09)

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them: __N/A   (all grounds have been exhausted)__

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        ☐ Yes        ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. __N/A_____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        ☐ Yes        ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: __N/A_____

_____

_____

_____

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)    At preliminary hearing: __Daniel Green, Esquire (Address unknown)__

_____

(b)    At arraignment and plea: __Daniel Green, Esquire (Address unknown)__

_____

PAE AO 241
(Rev. 10/09)

(c)  At trial: W. Fred Harrison, Jr. Esq. (Address Unknown)

(d)  At sentencing: W. Fred Harrison, Jr. Esq. (Address Unknown)

(e)  On appeal: W. Fred Harrison, Jr. Esq. (the Superior Court appointed) Thomas L. McGill, Jr., Two Penn Center, Phila. PA. 19102.

(f)  In any post-conviction proceeding: Barnaby C. Wittels, Esq., 1429 Walnut Street, Phila. PA. 19102, Lee Mandell, (both removed).

(g)  On appeal from any ruling against you in a post-conviction proceeding: Gerald Waters, Pro-se, P.O. Box 945, Marienville, PA. 16239-0945.

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          ☐  Yes     ☒  No

(a)  If so, give the name and location of the court that imposed the other sentence you will serve in the future:  N/A

(b)  Give the date the other sentence was imposed:  N/A

(c)  Give the length of the other sentence:  N/A

(d)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?          ☐  Yes     ☐  No

18.  **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

This Petition is timely under the AEDPA one year statute of limitations and equitable tolling.

PAE AO 241
(Rev. 10/09)

Page 18

---

---

---

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court.  The limitation period shall run from the latest of -

 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

 (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: <u>Petitioner's</u>
<u>conviction and sentence be vacated and this Court further</u>
<u>Order that petitioner be given a new trial within 90 days</u>
<u>of said directive of this Court or release petitioner from custody</u>
or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

PAE AO 241
(Rev. 10/09)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___April 7, 2023___.

(month, date, year)

Executed (signed) on ___April 7, 2023___ (date).

_____
Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. _____N/A_____

_____

_____

_____

_____

Petition Under 28 U.S.C. § 2254
for a Writ of Habeas Corpus

Attached continuation page

<u>Page 7</u> (Continued)

(b)(5) Grounds raised: glock 9mm Murder weapon used in this
homicide, in it's absence, the withheld impeachment
evidence violated the state and federal discovery rules
that undermined appellant's due process rights under
the 14th Amendment during trial. (iii) The PCRA Court
erred in making a objectively manifest unreasonable
decision to dismiss Appellant's PCRA claim that Trial
Counsel was ineffective in failing to object to the
Trial Court's cumulative abuses of discretion; mis-app-
lication of law; and his failure to seek disqualification
or recusal of the presiding jurist due to the partiality
and bias that undermined the confidance in the outcome
of trial.

Page 7-8 (Continued)

(c)(5) Grounds raised: to the exculpatory local government issue
Glock 9mm murder weapon used in this homicide; in it's
absence, the withheld impeachment evidence violated the
state and federal discovery rules that undermined Appellant's
due process rights under the 14th Amendment during trial.
(iii) Whether the Superior Court erred in sustaining the
PCRA court's manifest unreasonable decision to dismiss
Appellant's PCRA claim that trial counsel was ineffective
for failing to object to the trial court's cumulative
abuses of discretion; misapplication of law; and failure
to seek disqualification or recusal of the presiding jurist
due to partiality and bias that undermined the confidence
in the outcome of trial.

Page 8 (continued)

(12)    GROUND ONE: Court Unconstitutionally elevated the level of

**Petition Under 28 U.S.C. § 2254
for a Writ of Habeas Corpus**

Attached continuation page (2)

doubt necessary to secure an acquittal.

Page 10 (continued)

**GROUND TWO:**    discovery rule and Petitioner's due Process rights under the 14th Amendment.

Page 12 (continued)

**GROUND THREE:** law; and his failure to seek disqualification or recusal of the presiding jurist due to the partiality and bias that undermined the confidence in the outcome of trial

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA,

            Respondent

            v.

GERALD WATERS,

            Petitioner

:   No. 280 EAL 2021
:
:
:   Petition for Allowance of Appeal
:   from the Order of the Superior Court
:
:
:
:
:
:
:

## ORDER

**PER CURIAM**

    **AND NOW**, this 24th day of November, 2021, the Petition for Allowance of Appeal is **HELD** pending *Commonwealth v. Drummond*, 28 EAP 2021.

A True Copy Phoenicia D. W. Wallace, Esquire
As Of 11/24/2021

Attest: *Phoenicia D. W. Wallace*
Deputy Prothonotary
Supreme Court of Pennsylvania

J-S56021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERALD WATERS | : | |
| | : | |
| Appellant | : | No. 3150 EDA 2019 |

Appeal from the PCRA Order Entered October 7, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0308691-2006.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.*

MEMORANDUM BY KUNSELMAN, J.:                    Filed: March 5, 2021

Gerald Waters appeals *pro se* from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On June 10, 2004, the victim, Aaron Kelly was shot and killed while walking home from a friend's house with his six (6) year old son "Little Aaron." He was killed by Kevin Sampson, an employee of [Waters], at [Waters'] behest and direction. Prior to this murder, [Waters] had long made it known both to his girlfriend, Erica Johnson, and the victim that he was upset over their continued involvement together in the life of their son, Little Aaron, whom the victim and Ms. Johnson had together from their previous relationship. In November, 2004, while the police were still investigating the murder, [Waters] was sentenced to ten (10) months [of]

_____

* Retired Senior Judge assigned to the Superior Court.

J-S56021-20

incarceration in the Federal Detention Center for violating the terms of his probation for threats he made against the victim's family prior to the murder. Eventually, [Waters] was charged with the murder and brought to trial.

At [Waters'] trial, Ms. Johnson testified that during one of her visits with [Waters] in December of 2004 at the prison, he confessed to her that he had one of his employees, Kevin Sampson, shoot and kill the victim. [Sampson died in a car accident prior to Waters' confession to Ms. Johnson]. Further, at [Waters'] trial there were numerous witnesses who testified as [to Waters'] history of physical violence towards Ms. [Johnson] especially as it related to his anger over Ms. Johnson's continued involvement with the victim. Evidence also was presented to the jury as to threats made against the victim and his family by [Waters]. Further, at trial evidence was submitted to the jury as to statements made by Little Aaron that [Waters] and another man were ["]running between the cars parked on the street" when his father was killed and that he heard [Waters'] voice telling him to "run" prior to shots being fired.

On July 25, 2008 [Waters] was found guilty of first degree murder, possessing instrument of crime, and criminal conspiracy for the shooting death of Aaron Kelly and sentenced to life in prison without the possibility of parole. Thereafter, on October 6, 2008, [Waters] filed an appeal to our Superior Court following the trial court's denial of his post-sentence motions. Our Superior Court affirmed [Waters'] Judgment of Sentence on April 7, 2011. On February 9, 2012 [Waters'] Petition for Allowance of Appeal was denied by our Supreme Court.

PCRA Court Opinion, 5/27/20, at 1-2 (footnote omitted).

Waters filed a timely *pro se* PCRA petition on July 20, 2012, and the PCRA court appointed counsel. On May 30, 2014, PCRA counsel filed an amended PCRA petition. Thereafter, Waters filed a petition to proceed *pro se*

J-S56021-20

and, following a *Grazier*[1] hearing held on August 4, 2017, the PCRA court granted Waters' request.

Waters filed an amended *pro se* PCRA petition on September 26, 2017. The Commonwealth filed a motion to dismiss Waters' amended petition on June 28, 2018. On August 12, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Water's amended PCRA petition. Waters did not file a response. By order entered October 7, 2019, the PCRA court dismissed Waters' amended PCRA petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Waters raises three issues on appeal, which we reproduce verbatim:

> I.   Did the PCRA court err in it's manifest unreasonable decision to dismiss [Waters'] petition claim of ineffective assistance of counsel inasfar as counsel was not effective in his failure to object to the trial court's hypothetical jury instruction on reasonable doubt that elevated the level of doubt necessary to secure an acquittal has not merit[.]
>
> II.  Did the PCRA court err in it's manifest unreasonable decision to dismiss [Waters'] petition claim of ineffective assistance of counsel inasfar counsel was not effective in his inadvertence and/or ignorance to the exculpatory police issued Glock [9mm] murder weapon not being found anywhere, with respect to this circumstantial case, having no merit[.]
>
> III. Did the PCRA court err in it's manifest unreasonable decision to dismiss [Waters'] petition claim of ineffective assistance of counsel inasfar as counsel was not effective in his failure to object to the trial court's cumulative abuses of discretion; mis-

---

[1] *Commonwealth v. Grazier*, 718 A.2d 81 (Pa. 1998).

J-S56021-20

> application of law; or trial counsel's failure to seek disqualification or recusal of the presiding jurist due to partiality and bias during trial having no merit[.]

Waters' Brief at 5-6.[2]

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015)

(*en banc*) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

---

[2] In reciting Waters' issues, we have omitted the multiple sub-issues Waters provided as to each issue. In its Rule 1925(a) opinion, the PCRA court set forth verbatim the errors Waters asserted in his Rule 1925(b) statement. To the extent that Waters failed to raise any of these more specific claims in his statement, they are waived. **See generally**, **Commonwealth v. Pukowsky**, 147 A.3d 1229 (Pa. Super. 2016).

J-S56021-20

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

All of Waters' issues challenge trial counsel's ineffectiveness. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

The PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Charles A. Ehrlich has addressed each of Waters' ineffectiveness claims with proper citation to legal authorities and citation to the certified record. As we discern no legal errors in Judge

J-S56021-20

Ehrlich's analysis, and we find his factual findings and credibility determinations fully supported by our review of the record, we adopt Judge Ehrlich's 1925(a) opinion as our own in affirming the order denying Waters post-conviction relief.  **See** PCRA Court's Opinion, 5/27/20, at 5-11 (rejecting as meritless Waters' claim that trial counsel was ineffective for failing to object to trial court's reasonable doubt instruction); at 11-12 (rejecting Waters' claim regarding where the alleged murder weapon was found because it had no relevance to his participation in the murder); and at 12-13 (concluding that a review of the trial transcripts refutes Waters' claim of court bias).[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/5/21</u>

---

[3] The parties are directed to attach Judge Ehrlich's May 27, 2020 opinion to this memorandum in any future appeal.

J. S56021/20

Filed 05/04/2021

## IN THE SUPERIOR COURT OF PENNSYLVANIA
## EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA    :   No. 3150 EDA 2019

                : 

           v.               :

                :

GERALD WATERS          :

          Appellant       :

### ORDER

IT IS HEREBY ORDERED:

THAT the application filed March 13, 2021, requesting reargument of the decision dated March 5, 2021, is DENIED.

                                        PER CURIAM

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| v. | : | CP-51-CR-0308691-2006 |
| GERALD WATERS | : | |

## O R D E R

AND NOW, this **7** day of October 2019, upon a review of all of the issues raised by petitioner in his Post-Conviction Relief Act Petition, and after hearing the arguments of petitioner and counsel for the Commonwealth, this Court has determined that the issues raised by petitioner are without merit. Further, pursuant to Pa.R.Crim.P. 907, this Court forwarded to petitioner and counsel for the Commonwealth a twenty (20) day Notice of Dismissal.

Accordingly, the Commonwealth's Motion to Dismiss Petitioner's PCRA Petition is hereby Granted. Petitioner is hereby advised that he has the right to file an appeal to the Superior Court of Pennsylvania within thirty (30) days of the date of entry of this Order.[1]  Petitioner may appeal *pro se* or with appointed counsel. *In Forma Pauperis* status to continue.

BY THE COURT:

CHARLES A. EHRLICH, J.

*Commonwealth v. Gerald Waters*                    CP-51-CR-0308691-2006

---

[1] The appeal must be made in writing and filed in Criminal Motions, 1301 Filbert Street, Room 206, Philadelphia, PA 19107

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | CP-51-CR-0308691-2006 |
| | : | |
| v. | : | |
| | : | SUPERIOR COURT NO. |
| Gerald Waters | : | 3150 EDA 2019 **FILED** |

**FILED**

MAY 2 7 2020

OPINION

Appeals/Post Trial
Office of Judicial Records

Ehrlich, J.

Gerald Waters, hereinafter referred to as "Appellant," has filed an appeal from this Court's Order dismissing his petition, which sought relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541 *et seq.*

Factual and Procedural History

On June 10, 2004, the victim, Aaron Kelly was shot and killed while walking home from a friend's house with his six (6) year old son "Little Aaron." He was killed by Kevin Sampson, an employee of the appellant, at appellant's behest and direction. Prior to this murder, appellant had long made it known both to his girlfriend, Erica Johnson and the victim that he was upset over their continued involvement together in the life of their son, Little Aaron, whom the victim and Ms. Johnson had together from their previous relationship. In November, 2004 while the police were still investigating the murder, appellant was sentenced to ten (10) months incarceration in the Federal Detention Center for violating the terms of his probation for threats he made against the victim's family prior to the murder. Eventually, appellant was charged with the murder and brought to trial.

# Appendix

At appellant's trial, Ms. Johnson testified that during one of her visits with appellant in December of 2004 at the prison, he confessed to her that he had one of his employees, Kevin Sampson shoot and kill the victim.[1] Further, at appellant's trial there were numerous witnesses who testified as appellant's history of physical violence towards Ms. Johnsons especially as it related to his anger over Ms. Johnson's continued involvement with the victim. Evidence also was presented to the jury as to threats made against the victim and his family by the appellant. Further, at trial evidence was submitted to the jury as to statements made by Little Aaron that appellant and another man were 'running between the cars parked on the street" when his father was killed and that he heard appellant's voice telling him to "run" prior to shots being fired.

On July 25, 2008 appellant was found guilty of first degree murder, possessing instrument of crime, and criminal conspiracy for the shooting death of Aaron Kelly and sentenced to life in prison without the possibility of parole.[2] Thereafter, on October 6, 2008, appellant filed an appeal to our Superior Court following the trial court's denial of his post-sentence motions. Our Superior Court affirmed appellant's Judgment of Sentence on April 7, 2011. On February 9, 2012 appellant's Petition for Allowance of Appeal was denied by our Supreme Court.

On July 20, 2012 appellant filed a timely pro se PCRA petition. On May 30, 2014 a counseled Amended PCRA petition was filed by appellant.[3] Subsequently, appellant filed a Petition to Proceed Pro Se and following a *Grazier* hearing held on August 4, 2017, the Honorable Linda Carpenter of this Court granted appellant's request to proceed without consel.[4]

---

[1] Kevin Sampson died in a car accident prior to appellant's confession to Ms. Johnson.
[2] 18 Pa.C.S.A. §§ 2502(a),§907(b),and §903(a)(1), respectively.
[3] This Amended petition was filed by appellant's newly appointed counsel Barnaby Whittles, Esquire. Appellant's trial and initial appellate counsel, W, Fred Harrison, Jr. was granted leave to withdraw on June 10, 2010.
[4] The Honorable Renee Cardwell Hughes was the trial Judge but she retired from the bench prior to appellant's filing of his PCRA petition. The case was then reassigned to the Honorable Linda Carpenter and subsequently

# Appendix

Thereafter, appellant filed a pro se amended PCRA Petition on September 26, 2017. The

Commonwealth filed a Motion to Dismiss appellant's Amended Petition on June 28, 2018.  On

August 12, 2019, this Court, after thoroughly reviewing the filings of the parties, the issues

raised by appellant and the law relating to this matter, and after hearing the arguments, issued a

twenty (20) day Notice of Dismissal pursuant to Pa.R.C.P. 907. Thereafter, by Order dated

October 7, 2019 this Court formally dismissed appellant's Amended PCRA petition.

On October 20, 2019 appellant filed a timely Notice of Appeal.  On November 11, 2019

appellant filed a timely 1925(b) Statement of Errors Complained of on Appeal. On appeal,

appellant complains of the following errors which are set forth herein verbatim:

1. "Whether the PCRA Court erred in its decision to deny post-conviction relief on the predicate that trial counsel was not ineffective for failing to object to the trial court's jury instruction on reasonable doubt where the court unconstitutionally elevated the level of doubt necessary to secure an acquittal. (**Amended PCRA Petition, p.13**)"

2. "Whether the PCRA Court erred in its decision to deny post-conviction relief on the predicate that trial counsel was not ineffective for his inadvertence and/or ignorance of the exculpatory local government issue glock 9mm murder weapon used in this homicide, in its absence, not being impeachment evidence in violation of the state and federal discovery rule that undermined appellant's due process rights under the 14th Amendment during trial. (**Amend. Pet. \*19**)"

3. Whether the PCRA Court erred in its decision to deny post-conviction relief on the predicate that trial counsel was not ineffective for failing to object to the trial jurist's cumulative abuses of discretion or seek disqualification and recusal due to the impartial bias during trial. (**Amend. Pet. \*26**)

4. Whether the PCRA Court erred in its decision to deny post-conviction relief on the predicate that trial counsel was not ineffective for failing to object to the trial jurist's colloquy and misapplication of the law that appellant was not required to solemnize the record with an oath; that an "affirmation" was not an oath that impressed in appellant's conscience.

Appellant's Pa.R.A.P.1925(b) Statement of Errors.

---

reassigned to the undersigned, Judge Charles A. Ehrlich, by Order of the Court of Common Pleas, Criminal Division Supervising Judge, Leon Tucker, on October 16, 2018.

**Appendix**

## Standard of Review

### Ineffectiveness of Counsel

The law presumes that counsel was effective, and therefore Petitioner carries the burden

of proving that counsel was ineffective. *Commonwealth v. Baker,* 614 A.2d 663, 673 (Pa.1992).

To establish ineffectiveness under the PCRA, a Petitioner must demonstrate (1) that the

underlying claim is of arguable merit; (2) that counsel's course of conduct was without any

reasonable basis designed to effectuate his or her client's interest; and (3) that he or she was

prejudiced by counsel's ineffectiveness. *Commonwealth v. Kimball,* 724 A.2d 326, 333 (Pa.

1999); *Commonwealth v. Lauro,* 819 A.2d 100, 105–106 (Pa. Super. 2003). Prejudice in the

context of an ineffective assistance of counsel claim requires that the defendant prove that there

is a reasonable probability that, but for counsel's alleged errors, the outcome of the trial would

have been different. *Commonwealth v. Bond,* 819 A.2d 33, 42 (Pa. 2002).

Failure to satisfy any prong of the test for ineffectiveness will require rejection of the

claim. *Commonwealth v. Hudson,* 820 A.2d 720, 726 (Pa. Super. 2003). Moreover,

ineffectiveness only occurs where the alternative not selected "offered a potential for success

substantially greater than the tactics used." *Commonwealth v. Clemmons,* 479 A.2d 955, 957

(Pa. 1984). Where it is clear that allegations of ineffectiveness of counsel are baseless or

meritless, then an evidentiary hearing is unnecessary and the unfounded allegations should be

rejected and dismissed. *Id.* at 361; 479 A.2d at 957.

## Discussion

The appellant argues that his trial counsel was ineffective for failing to: (1) object to the

trial court's reasonable doubt instruction; (2) present evidence that the purported murder weapon,

4

# Appendix

a glock 9 mm firearm, was later retrieved from an address connected to someone other than the appellant; (3) object to the trial court's alleged abuses of discretion or seek her disqualification and recusal for bias shown during the trial; and (4) object to the trial court's colloquy of appellant with regard to his oath or affirmation.

1. **Failing to object to the Court's instruction regarding reasonable doubt.**

   Appellant argues that trial counsel was ineffective for failing to object to the trial judge's jury instruction regarding reasonable doubt.

   While charging the jury, the Honorable Renee Cardwell Hughes instructed the jury on what constituted reasonable doubt as follows:

   > Ladies and Gentlemen, this burden, proof beyond a reasonable doubt, it is the highest burden in the law. And although the Commonwealth bears the burden of proving Gerald waters guilty beyond a reasonable doubt that does not mean that the Commonwealth has to prove its case beyond all doubt. The Commonwealth is not required to meet some kind of mathematical certainty. The Commonwealth is not required to demonstrate the impossibility of innocence.

   > A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause or to hesitate or to refrain from acting upon a matter of the highest importance to their personal affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence that was presented with respect to some element of each of the crimes charged. You see, ladies and gentlemen, the last thing we are going to talk about are the crimes. Now the crimes have specific elements that must be proven before a crime can be made out. So, a reasonable doubt is one that will undermine the elements of a crime.

   > Let me give you an example of reasonable doubt. I was really fortunate to have the opportunity to speak with each of you. And I know that each one of you has someone in your life that you love, a precious one, a spouse, a significant other, a child, a grandchild. Each one of you loves somebody. What if you were told that precious one had a life-threatening medical condition and the physician said the best protocol is a surgery? You probably are going to ask for a second opinion, probably a third. You probably are going to go on the internet and do some research, go down to the library and find out, okay, what is the condition, and do we really have to have surgery to deal with it. What are my other options? What is the best protocol?

## Appendix

If you are like me, you will call everyone who you know in medicine. Tell me what you know. I need to know about this procedure. I need to know about this illness. Tell me what you know.

But at some point the question will be called. Do you go forward? If you go forward, it's not because you moved beyond all doubt. Ladies and gentlemen, there are no guarantees in life. If you go forward, it's because you have moved beyond all reasonable doubt.

A reasonable doubt must be a real doubt ladies and gentlemen. It may not be a doubt that is manufactured to avoid carrying out an unpleasant responsibility. You may not find Gerald Waters guilty based upon a mere suspicion of guilt. The Commonwealth's burden is to prove Gerald Waters guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then Gerald Waters is no longer presumed to be innocent, and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty."

N.T. 7/24/2008 at 26-40. Trial counsel made no objection to this instruction.

In this regard, appellant relies upon a recent federal decision, *Brooks v. Gilmore*, 2017 WL 3475475 (E.D. Pa.2017). In *Brooks*, a federal district court found an essentially identical jury instruction that was also given by the trial judge herein, retired Judge Renee Cardwell Hughes, to be constitutionally infirm because "it elevated the level of doubt needed to acquit". *Id.* at 26. Accordingly, the court in *Brooks*, granted petitioner's request for a writ of habeas corpus and ordered that petitioner therein be retried.

In *Brooks*, United States District Court Judge Gerald Austin McHugh, citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993), wrote that "The nature of the error in this case [reasonable doubt instruction] disposes of the question of prejudice. Judge McHugh noted that our United States Supreme Court in *Sullivan* held that "a misdescription of the burden of proof...vitiates all of the jury's findings," Judge McHugh therefore concluded that, pursuant to *Sullivan*, any error in defining reasonable doubt would be considered as "structural." However, Judge McHugh

## Appendix

correctly acknowledged that in the context of a *Strickland*[5] claim, a finding of prejudice is required to substantiate a claim of ineffective assistance of counsel. Further, pursuant to *Weaver v. Massachusetts*, 137 S.Ct. 1899 (2017) not every instance of structural error can be deemed prejudicial. Nevertheless, Judge McHugh, citing *Wiggins v. Smith*, 539 U.S.510, 537 (2003) and *Buck v. Davis*, 137 S.Ct.759, 776 (2017), concluded that prejudice had been established given that there was not "overwhelming" evidence of the defendant's guilt such that 'at least one juror would have harbored a reasonable doubt."

Judge McHugh then summarily discounted our Pennsylvania Superior Court's affirming decision approving of the legality of the subject reasonable doubt instruction given by Judge Hughes, writing that "the...decision involved both an unreasonable determination of fact as to what the charge represented, and an unreasonable failure to recognize the principles established by *Sullivan* and *Cage*." In so doing, the federal district judge opined that our appellate court endorsed 'an improper application of the [reasonable doubt] standard." Judge McHugh wrote that although the instruction contained the "properly defined reasonable doubt [instruction] in the first instance" our Superior Court improperly endorsed an "improper example" of reasonable double.

Judge McHugh reasoned that *Cage* required a "deeper level of analysis" than our Superior Court had endeavored to do in reaching its conclusion as to the appropriateness of the instruction on appeal. Judge McHugh then concluded that the example of a loved one's medical condition utilized by Judge Hughes as part of her reasonable doubt instruction was "a subtle violation of the Constitution, no less than an overt one, is still a violation." Accordingly, the

---

[5] Strickland v. Washington, 466 U.S. 668 (1984)

# Appendix

district court in *Brooks*, granted petitioner's request for a writ of habeas corpus and ordered that petitioner therein be retired.

It is well settled that a jury charge elevating the level of reasonable doubt needed for an acquittal is a due process violation. *See Cage v. Louisiana*, 498 U.S. 39, 41 (1990). However, when reviewing an alleged erroneous jury instruction on appeal, the instruction must be read "as a whole, rather than in isolated fragments." *Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2017). Further, in this Commonwealth, trial judges are given great discretion with regard to jury instructions. *See Commonwealth v. Eichinger*, 915 A.2d 1122, 1138 (Pa. 2007). Further, when charging the jury, "the court may use its own form of expression […] as long as the […] instruction accurately conveys the law." *Commonwealth v. Cook*, 952 A.2d 594, 627 (Pa. 2008) (quoting *Commonwealth v. Spotz*, 759 A.2d 1280, 1287(Pa. 2000)).

The appellant argues that "this case is controlled by the recent Eastern District of PA opinion in [*Brooks v. Gilmore*, No. 15-5659, 2017 U.S. Dist. LEXIS 127703 (E.D. Pa. Aug. 11, 2017)]." As previously discussed, in *Brooks* a federal district court found an essentially identical jury instruction by Judge Hughes to be constitutionally infirm because "it elevated the level of doubt needed to acquit". *Id.* at 26.

However, "decisions by federal courts inferior to the United States Supreme Court have no precedential authority over […] court[s] within this Commonwealth's judicial system." *Commonwealth v. Santiago*, 855 A.2d 682, n.10 (Pa. 2004). Indeed, our Pennsylvania Superior Court has repeatedly upheld, both prior to and following defendant's trial in December 2010, the legality and constitutionality of the instruction the appellant now challenges. *See Commonwealth v. Corbin*, No.537 EDA 2015 (Pa. Super 2016) (non-precedential) (rejecting the identical illustrative hypothetical on reasonable doubt issued by the same trial judge, Renee Cardwell

# Appendix

Hughes); *Commonwealth v. Gant*, No. 1612 EDA 2007 (Pa. Super 2009) (non-precedential) (upholding identical instruction by Judge Hughes); *Commonwealth v. Johnson*, No. 1639 EDA 1999 (Pa. Super 2000) (non-precedential) (upholding identical instruction by Judge Hughes); *Commonwealth v. Clarkson*, No. 2859 EDA 2003 (Pa. Super 2004) (non-precordial) (upholding validity of court's reasonable doubt instruction that included illustrative hypotheticals).

Moreover, in direct contrast to the holding *Brooks*, the federal courts have likewise upheld the propriety and constitutionality of this challenged reasonable doubt instruction. See *Johnson v. Varner*, No. 01-CV-2409 (E.D. Pa. 2003) and *Gant v. Giroux*, No. 15-CV-4468 (E.D. Pa. 2017).

Appellant asserts that counsel was ineffective for failing to challenge the instruction both at the time of trial and on direct appeal. However, Pennsylvania appellate courts have repeatedly, and without exception, refused to find error in the instruction. Therefore, counsel cannot be deemed ineffective for failing to raise a baseless claim. *See Commonwealth v. Jones*, 912 A.2d 268 (Pa. 2006) (counsel will not be deemed ineffective for failing to raise a meritless claim); *Commonwealth v. Cox*, 863 A2d 536 (Pa. 2004) (appellate counsel will not be deemed ineffective for failing to raise a claim without merit on direct appeal).

Thus, contrary to the decision and supporting opinion by District Court Judge McHugh in *Brooks*, the instruction given by retired Judge Hughes was within her judicial discretion and was a proper and accurate example used to explain a complicated legal concept. Judge Hughes' began and concluded the jury charge with language essentially identical to the suggested jury charge set forth in Pennsylvania Suggested Standard Criminal Jury Instruction § 7.01, entitled "Presumption of Innocence: Burden of Proof: Reasonable Doubt." At issue is an analogy used in the middle of the otherwise standard jury charge on reasonable doubt. Judge Hughes asked the

## Appendix

jury to think about reasonable doubt as something that would cause them to hesitate in a matter of importance in their own life. In doing so, Judge Hughes used an analogy of a situation in which a reasonable person would have cause to hesitate. She compared a juror choosing to pursue surgery for a love one, recommended by one doctor, to treat a life-threating condition as an example of reasonable doubt necessary before convicting the defendant.

The *Brooks* court characterized the instruction as a choice between "chance at life" and certain death. *Brooks v. Gilmore*, No. 15-5659 at 9. This is a mischaracterization of the instruction. Judge Hughes demonstrated in her instruction that compelling evidence would be needed to go forward. "You will probably research the illness. You will research the people who handle this, the hospitals. If you are like me, you will call everyone who you know who has anything to do with medicine in their life. Tell me what you know." N.T. 12/17/10 at 20. This example, in the context of the entire charge, did not elevate the level of doubt needed to acquit the defendant.

This Court has thoroughly reviewed Judge Hughes' entire jury instructions in the case sub judice, and finds that when taken as a whole, the trial court's jury instruction relating to reasonable doubt, which included the Pennsylvania Standard Criminal Jury Instruction relating to reasonable doubt, did not elevate the level of reasonable doubt necessary for the jury to find the appellant not guilty. The trial court in *Cage* used the words "grave uncertainty" and "substantial doubt" to describe reasonable doubt while charging the jury. Judge Hughes neither used those words nor did the instruction that was used escalate the reasonable doubt standard. Therefore, unlike the reasonable doubt instruction found to be constitute a due process violation in *Cage*, infra, Judge Hughes' reasonable instruction was proper and within her judicial discretion.

# Appendix

Indeed, one could just as reasonably argue that the example used by Judge Hughes

actually *elevated the Commonwealth's burden of proving appellant guilty* by equating the great

efforts that one would endeavor to do in order to help save a loved one's life with the

Commonwealth's burden of proving appellant guilty beyond a reasonable doubt.

Therefore, the instruction, especially in the context of the charge as a whole, did not

reduce the burden of the Commonwealth to prove appellant's guilt beyond a reasonable doubt.

Trial counsel could thus not have been ineffective for failing to object to a jury charge that was

repeatedly upheld by our appellate courts as constitutional. Accordingly, no relief is due.

2. <u>Failing to present evidence that the purported murder weapon was not found in</u>
<u>appellant's possession but in someone else's possession..</u>

Appellant contends that his trial counsel should have presented to the jury evidence that

the firearm purportedly used to murder the victim was found in the possession of someone other

than appellant himself. Appellant's contention is without merit as it fails to demonstrate any of

the necessary elements set forth in *Kimball, supra.*

Appellant fails to prove that his claim has any arguable merit. The fact that the purported

firearm allegedly used by appellant's employee to murder the victim was not found in the

possession of appellant does not help prove that he was not involved in the murder. In fact,

evidence at trial indicated that appellant owned numerous handguns despite the fact that he was

not licensed to possess firearms. N. T. 7/10/08, 123, 143; N.T. 7/14/2009, 81-82; N.T. 7/17/08,

263-64; N.T. 7/21/08, 40. 7/17/08, 69-70. Yet despite possessing numerous guns; no firearms,

including the murder weapon, were found at appellant's address. N.T. 7/21/08, 279.

Thus, the jury was well aware of the fact that appellant did not own the murder weapon

and therefore would not have been surprised to learn that it was not found in his possession along

**Appendix**

with all the other firearms that were illegally possessed by the appellant. Therefore appellant cannot demonstrate that a defense of 'gun found elsewhere" was remotely viable or helpful. Therefore trial counsel cannot be faulted for failing to pursue a trial strategy that was not viable. Moreover, appellant fails to demonstrate how this defense would have rebutted the overwhelming evidence presented at trial of his guilt, including his confessing to his girlfriend, his presence at the murder scene, as well as his pattern of violence and jealousy and threatening behavior directed at the victim.

Therefore, appellant's contention in this regard is without merit.


3. <u>Failing to object to the Trial Court's abuses of discretion or seek her recusal for bias.</u>

Similarly, there is no arguable merit to appellant's claim that trial counsel should have objected to alleged bias against him by the trial court or to seek the trial judge's recusal for bias. It is well established in Pennsylvania that judges are presumed to be "honorable, fair and competent." *Commonwealth v. Druce, 848* A.2d 104, 108 (Pa. 2004). Further, the decision to recuse is uniquely left to the discretion of the judge. *Commonwealth v. Edmiston,* 634 A.2d 1078, 1088 (Pa. 1993). Recusal is required only when the party requesting recusal demonstrates a "substantial doubt as to the judge's abiity to preside impartially." *Commonwealth v. Reyes*, 870 A.2d 888, 897 (Pa. 2005).

Appellant's claim is not supported by the record. The record established that the trial judge had an equally cordial and familiar relationship with both the prosecutor and defense counsel. *See* N.T. 7/11/08, 101-111, 145. Further, a review of the entire trial record demonstrates that both the court and the attorneys conducted themselves respectfully and with fairness despite dealing with a trial that was complex and when having to deal with a defendant

who at times was uncooperative. *See* N.T. 7/9/08, 27-29, 64. Appellant claims that the trial court

was biased are reflective more so of friendly banter between the trial court and counsel.

Therefore appellant fails to demonstrate that had a request been made for recusal that it would

have been granted. *Commonwealth v. In re Adams*, 645 A.2d 269, 273 (Pa. Super. 2017)

("Counsel cannot be ineffective for failure to [raise] a frivolous [recusal] claim…).

*Commonwealth v. Bradley*, 473 A.2d 1082, 1084 (Pa. Super. 1984) ("Counsel is not required to

pursue motions which have no arguable merit).

Moreover, appellant fails to demonstrate that the trial court's alleged bias resulted in any

incorrect judicial decision during the course of his trial. *Commonwealth v. Balodis*, 747 A.2d

341, 343-344 (Pa. 2000) (Prejudice is established when an appellant demonstrates that counsel's

chosen course of action had an adverse effect on the outcome of the proceedings). Further, given

the overwhelming evidence presented at trial as to appellant's guilt, appellant fails to explain

how a motion for recusal, had it been made and granted, could have led to a different outcome.

Therefore, appellant's claim that trial counsel was ineffective for failing to request the

trial court's recusal is without merit and was properly denied

### 4.  Failing to object to the Trial Court's colloquy of appellant with regard to his oath or affirmation

Given that this issue was not set forth in appellant's Amended Petition and was

therefore not address by the Commonwealth in their Motion to Dismiss nor considered or ruled

upon by this Court, this issue has been waived for purposes of appeal. *Commonwealth v. Pitts*,

981 A.2d 875 (Pa. 2009).

**Appendix**

CONCLUSION

In summary, this Court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

By the Court:

4/14/2c
Date

HONORABLE CHARLES A. EHRLICH

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**GERALD WATERS,**              :
        Petitioner,

                     :

**V.**

                     :

**RANDY IRWIN,**
Superintendent,                 :        **No. 15-**
State Correctional Institution at Forest

                     :

    and

                     :

**PA. DEPARTMENT OF CORRECTIONS,**
        Respondents.              :

_____ :

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

Submitted by: Gerald Waters, Pro se
                        Petitioner

P.O, Box 945
286 Woodland Drive
Marienville, PA. 16239

**Statement of the Case**

## I. Procedural History

On July 25, 2008, petitioner was convicted of murder in the first degree, conspiracy, and weapons offenses by a jury presided over by the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas. W. Fred Harrison, Esquire represented petitioner. On the same day the jury convicted above, the court sentenced petitioner to life imprisonment without parole on the murder bill and an additional 20 to 40 years for the conspiracy, and 1 to two years for the weapon charges.

On October 6, 2008 petitoner filed *pro se* post sentence motions which were supplemented by record counsel Mr. Harrison. Subsequently, the court denied post sentence motions and petitoner took a timely appeal to the Superior Court of Pennsylvania. Mr. Harrison failed to file a brief and petitoner filed a *pro se* reconsideration motion that was subsequently granted by the Superior Court. Counsel Thomas L. McGill, Esquire was appointed in Mr. Harrison's stead.

On April 7, 2011, a pannel of the Superior Court affirmed the judgment of sentence in an unpublished opinion. **Commonwealth v. Waters**, 29 A.3d. 825 **(Pa.Super. 2011).** Petitioner declined to persue *certiorari* review in the United States Supreme Court after seeking review of the Superior Court's denial through the Pennsylvania's Supreme Court discretionary review *allocatur being denied* February 9, 2012. **Commonwealth v. Waters**, 614 Pa. 713, 38 A.3d. 825 (Pa. 2012).

On July 20, 2012, petitoner filed a *pro se* petition under the Post Conviction

Relief Act (**PCRA**). Thereafter, the Honorable Judge Linda A. Carpenter was assigned to petitioner's case. [1] On September 11, 2014, the court appointed Barnaby C. Wittels, Esquire as PCRA counsel. After Mr. Wittels' failure to communicate; petitioner sought *pro se* status. As an alternative, the court appointed Lee Mandell on August 25, 2015; again, he never communicated which spawned petitioner's subsequent *pro se* request that was granted.

On September 26, 2017, at the behest of PCRA Judge Linda A. Carpenter, petitioner filed an amended PCRA petition. Judge Carpenter Ordered the District Attorney's Office to file a response by December 8, 2017; (but made no response to petitioner's substantive legal claims), only to respond seven (7) months later on June 28, 2018.

On October 16, 2018, Supervising Judge Leon W. Tucker forwarded a notice to petitioner that Judge Carpenter was being removed from considering his case; thus appointing Hon. Judge Charles A. Ehrlich. A year later, on August 12, 2019, after having heard no oral argument on any of the underlying substantive PCRA claims, the PCRA court held an evidentiary hearing whereas the jurist sought petitioner to not file a response to his intent to dismiss; petitioner declined and filed a detailed response on August 28, 2019. Two months later, on October 7, 2019, the PCRA court dismissed petitioner's PCRA petition.

---

[1] On April 29, 2011 Judge Hughes announced her resignation from the bench one day after the Pennsylvania Supreme Court condemned her "reprehensible" judicial misconduct. *See* Commonwealth v. Dougherty, 18 A.3d 1095, 1097 (Pa. 2011)(Bare. J. Concurring, joined by three other justices). The misconduct included her admitted record tampering.

A timely notice of appeal was filed in both the Superior Court and the PCRA court on November 8, 2019. Petitioner comported with the Superior Court's Order to file a Concise Statement of Matters Complained of on Appeal thereafter on November 15, 2019; received by said Court on November 18, 2019. On May 27, 2020 the PCRA court filed his Rule 1925(b) Opinion. Originally, petitioner's dismissal was March 4, 2021; After a reconsideration of petitioner's denail, on May 5, 2021, the Superior Court affirmed the dismissal of the PCRA petition. Thereafter, the Pennsylvania Supreme Court denied the petition for allowance of appeal. This habeas petition timely follows.

## II. Factual Background

At approximately 9:36 p.m. on June 10, 2004, on the corner of Philellena and Temple Road in Mt. Airy Philadelphia, Aaron Rasheed Kelly was shot and killed. The Commonwealth theorized that petitioner shot him out of a "love triangle" that went wrong. That petitioner had his employee Kevin Sampson kill the victim. Kevin's convenient involvement came after he died in a car accident while driving his mother's car thereafter.

The Commonwealth's case against petitioner was based on the testimony of two witnesses. One eyewitness being a minor child Aaron Walter Kelly (Little Aaron)(the decedent's son). The other main witness, with whom was not an eyewitness, was Erica Johnson, little Aaron's mother. Erica Johnson provided all of the background to help establish petitioner's

3

purported motive for the crime.

The only physical evidence that the Commonwealth had was a firearm that was the service weapon of a city police officer for which was hidden from consideration of this case during trial. The incriminating statements of Commonwealth witness Erica Johnson was the only probable casuse evidence. The Commonwealth had no physical evidence other than Ms. Johnson's statement linking petitioner to the crime. Erica, as the purported star witness, had no direct knowledge of this crime, and was produced purly as the motive witness in this absolute circumstantial case.

More specifically, Erica Johnson testified that she always lived with petitioner and lived nowhere else, however, petitioner was to be controlling and did not permit her to leave petitioner's residence at 8012 Algon Avenue between the years of 2002 all the way up to the date of the crime on June 10, 2004. This was heavily rebutted by the testimony of this witness own mother Roslyn Johnson; homicide detective Kenneth Rossiter; Dana Mitchell; *et al.*, whereas, they testified that their communications with Erica Johnson was at her mother's house on Temple Road, blocks away from the crime scene.

However, Erica Johnson's story from her initial statement was that she never saw petitioner with a firearm before. She also acknowledged that she lived with her mother at Temple Road at the time of the murder. The

Commonwealth dismissed this factual finding only to foist it's narrative that petitioner was controlling and jealous which graduated to the murder.

Erica Johnson's mother Roslyn testified that petitioner would come by her house from time to time to check on her daughter. And perhaps most importantly, she testified at the motions hearing that her daughter (Erica) was packing her cloths at a fast rate because she wanted to stay with petitioner for a few days after she learned that the homicide detectives visited her mother's house on Temple Road for which she lived.

This narrative was siginificant because the "*controlling*" aspect of a relationship could not exist if Erica only lived with petitioner for "two months" as Mrs. Roslyn Johnson was castigated for testifying to by the trial jurist. Erica's admission that she never saw petitioner with a firearm would have negated her other number of inconsistencies related to the concatenation of the events purportedly leading up to this crime.

The hidden discovery material of the actual firearm made it impossible to challenge the circumstantial and hearsay gross generalizations presented as evidence. The trial counsel did not impeach Ms. Johnson with any aspect of her stories that petitioner had a gun to her head in the middle of the night to thwart her exit from leaving petitioner's house at any time of any night as she did not live with petitioner during the time of the murder.

Perhaps most importantly, the only eye witness to his father's murder was victimized in his elementary school sexually by classmates in the rest room. He was distrought and attempted suicide; whereas, the trial court cited the Rape Shield Act in not making the fact finders abreast of this critical aspect of the case. Instead, the trial court led the fact finders to believe that Little Aaron was acting out in attempt of suicide due to being in the presence of petitioner. This was the premise of the Tender Years Motion grant.

The factual basis of the Commonwealth's claim was skewed at most inasfar as the court permitted the Assistant District Attorney to alter and omit the trial transcripts to take objections out of the record on several occasions without challenge from counsel. THese record admissions permitted the Commonwealth to prosecute with impunity when allowing objections to be omitted from the record.

The trial court, as the PCRA court, Superior Court and Pa. Supreme Court failed to address, continuously directed the ADA to alter the trial record; notwithstanding, the court ordered the stenographer to "stop typing" when saying things "*less than judicial*". THe court suggested that petitioner's trial counsel deceive the jury into believing the "*lawyerly objection*" was his on the Tender Years Testimony. As petitioner shows below, there were extensive instances, as mentioned above, all which the jury knew nothing about.

## Statement on Exhaustion

Each of the claims raised in this habeas petition was first fairly presented to the state courts in a timely and properly filed PCRA petition and each alleged a federal constitutional violation. Following summary dismissal of these PCRA claims, each claim was presented to the Superior Court of Pennsylvania on petitioner's appeal as of right. Following that court's summary affirmance of the lower court's dismissal, petitioner presented each of these claims again on discretionary review before the Supreme Court of Pennsylvania. As such, each claim presented here was fully exhausted in state court.

## Statement on AEDPA and its Governing principles

Each of the claims presented in this petition was adjudicated on the merits in state court. Because of that, the provisions of the Anti-terrorism and Effective Death Penalty Act of 1996 ("**AEDPA**") govern this Court's review. **28 U.S.C. § 2254** requires deference to the state court's rulings on these claims. Section *2254* precludes habeas relief for any claim that was "adjudicated on the merits in State court proceedings unless the adjudication of the claim" meets either of two conditions under **28 U.S.C. § 2254(d)**.

First, habeas relief may be granted if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." **§ 2254(d)(1).** A decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the U.S. Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the U.S. Supreme] Court and nevertheless arrives at a result different from [the U.S. Supreme Court's] precedent." **Williams v. Taylor, 529 U.S. 362, 405-06 (2000).**

By contrast, a decision involves an unreasonable application of clearly established law where a state prisoner shows "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for a fairminded disagreement." **Harrington v. Richter, 562 U.S. 86, 103 (2011).** A state court's application of the U.S. Supreme Court precedent must therefore be "objectively unreasonable, not merely wrong; even clear error will not suffice." **White v. Woodall, ____U.S. ____, 134 S.Ct. 1697, 1702 (2014)**(internal quotations marks omitted)(quoting **Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).**

This Court accords no deference to a state court's resolution of a claim if that resolution was contrary to or reflected an unreasonable application of

clearly established U.S. Supreme Court precedent. Review of the underlying claim in that case is *de novo*. **Saranchak v. Sec' v. PA Dep't of Corrections,** __ F.3d. __, 2015 WL 5315581 at *8 (3d Cir. Sept. 14, 2015)(citing **Breakiron v. Horn,** 642 F.3d 126, 138 (3d Cir. 2011)).

Second, Habeas relief is warranted if the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." **§ 2254(d)(2).** The state court's factual findings are "presumed to be correct" and petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." **28 U.S.C.§ 2254(e)(1).** But "even if a state court's individual factual determinations are overturned, what factual findings remain to support the state court decision must still be weighed under the overreaching standard of section 2254(d)(2)." **Lambert v. Blackwell,** 387 F.3d 210, 235-36 (3d Cir. 2004).

## CLAIM ONE

**I. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S JURY INSTRUCTION ON REASONABLE DOUBT WHERE THE TRIAL COURT UNCONSTITUTIONALLY ELEVATED THE LEVEL OF DOUBT NECESSARY TO SECURE AN ACQUITTAL**

---

## A. The Constitutional Violation

### I. Facts Plead and Proven in PCRA Proceedings

In Post Conviction proceedings, petitioner engendered that the trial judge Reneé Cardwell Hughes' hypothetical jury instruction unconstitutionally elevated the level of doubt necessary to secure an acquittal. Furthermore, trial counsel's dereliction of duty to object thereto violated petitioner's 6th and 14th Amendment right to a fair trial.

In this case, Judge Hughes' challenged jury instruction are as follows:

**THE COURT:** "... *I was fortunate to have the opportunity to .... And I know that each one of you has someone in your life that you love, a precious one, a spouse, siginificant other, a child, a grandchild. Each one of you l oves somebody. What if you were told that that precious one had a life-threatening medical condition, and your physical said the best protocol is surgery. You probably are going to ask for a second opinion, probably a third opinion. You might even go on the internet and do some research, go down to the library and find out, okay, that is this condition, and do we r eally have surgery to deal with it*[.*] What are my options? What is the best protocol? If you are like me, you are going to call everybody you know in medicine. Tell me what you know. I need to know about this procedure. I need to know about this illness. Tell me what you know. But at some point the question will be called. **Do you go forward?** If you go forward with surgery, it is because you have moved beyond all doubt. There are no guarantees, Ladies and Gentleman, **If you go forward**, it is because you have moved beyond all*

*reasonable doubt.*

**[N.T. 7/24/08, 38-39]**. Trial counsel did not object.

During PCRA, petitioner engendered this excerpt as a 14th Amendment Constitutional violation, whereas, defense counsel failed to fulfill his obligation to make a contemporaneous objection to the very legnthy hypothetical jury instruction; which the trial judge endorsed as demonstrating the meaning of reasonable doubt.

Petitioner contends that the above excerpt encourageed jurors to use it's personal life experiences to weigh reasonable doubt against *all doubt* as it was not a permissible "*solemnizing comment*," **Cupp v. Naughten, 414 U.S. 14 (1974),** because it was a charge to the jury as a model for decision-making, and in the process elevated the level of doubt needed to acquit.

Petitioner's complaint is that in further defining reasonable doubt with the challenged instruction, the trial court inserted a requirement that any doubt worthy of acquittal must be so serious and grave that it would raise to the level of causing a mother to reject surgery for her dying child when surgery was the only protocol that could save the child. As discussed below, raising the stakes in this manner is unconstitutional. This prosecution-friendly instruction relieved the Commonwealth of it's heavy burden of proof and invaded the provence of each juror to apply the standard consistent with

11

his or her own life experiences and values.

Moreover, with the above verbatim hypothetical anology of the trial jurist, the court propounded to the jury how this reasonable doubt standard was to be applied: specifically prefaced "So, a reasonable doubt is one that will undermine one of the elements of a crime." **[N.T. 7/24/08, 37]**. However, petitioner readily acknowledges that elsewhere in the court charge, she made a brief correct analyst of reasonable doubt; which was legally accurate, then she undermined it by a lengthy and emotionally charged illustration that was antithetical to the concept of the legal governing standard. *Id. at* **38-39.**

The United States Supreme Court opined that: "There is no question that, under clearly established federal law, an instruction that contains both proper and improper charges can violate a [petitioner] rights." **Frances v. Franklin**, 471 U.S. 307, 315 (1985)(Where a jury charge includes both proper and improper content, "*the potentially offending words must be considered in the context of the charge as a whole.*")' **Whitney v. Horn**, **280 F.3d 240, 256 (3d. Cir. 2002)**(though an instruction may in one place "correctly explain[]the law," it may in another contain a "*constitutional flaw*" that requires reversal); **United States v. Gorden**, 290 F.3d 539 (3d. Cir. 2002).

Specifically, this instruction unfairly prejudiced petitioner in two

ways. First, the court used a situation — a life threatening illness of a child or other loved ones *for which only one treatment existed* — where of course any reasonable person would authorize moving forward and accepting the risk. If "*the best protocol*" was the surgery, who among us would not proceed and take the last chance to save our child? The court posed the choice between (1) on the one hand saving our child's life by moving forward and resolving the doubts and (2) on the other hand watching our child die.

The trial court's instruction thus equated the decision to move forward and authorize the surgical treatment with resolving doubts about petitioner's guilt and moving forward to convict. This made it overly easy for a juror to resolve or simply ignore altogether whatever reasonable hesitations he or she harbored about petitioner's guilt: "I, the juror, am doing the right thing by moving forward, overcoming my doubts and convicting, just like I would do if my child were dying". Indeed, it made the conviction a foregone conclusion.

Petitioner posits that it is presumed that the jury follows the court's instructions during trial. **Commonwealth v. Tedford**, 960 A.2d. 1, 37 **(Pa. 2008)**. Therefore, the challenged hypothetical jury instruction mentioned herein above went against the legal reasonable doubt standard. The governing standard commands a vote for acquittal if the juror "*pauses*" or "*hesitates*" before acting in a matter of the highest importance.

**Commonwealth v. Stokes**, 615 A.2d. 704, 710 (Pa. 1992)(approving instruction that specifically authorizes acquittal where a juror "hesitates to seriously consider as to whether he or she should do a certain thing before finally acting."); *q.v.*, **Victor v. Nebraska**, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d. 538 (1994).

Petitioner plead and proved during PCRA that the trial court unconstitutionally lowered the prosecution's burden of proof by the above grave and substantial trial court's description of reasonable doubt. Petitioner relied upon the U.S. District Court Judge Gerald Austin M<sup>c</sup>Hugh's August 11, 2017 Opinion in the *__Brooks__* [2] case that highlighted the *__Holland__*, [3] progeny of the United States Supreme Court.

The *Brooks* Court relied on the U.S. Supreme Court *Holland* case that reasonable doubt should be expressed "*in terms of the kind of doubt that would make a person hesitate to act rather than the kind on which he would be willing to act.*" *Id.* 348 U.S. at 140. The Brooks Court further explained: "[t]he problem is compounded by the fact that the trial judge structured the hypothetical in terms of the jury proceedings to take action on behalf of their family member, twice using the phrase '*if you go forward...*'". *Id.* at *4.

To that point, Judge M<sup>c</sup>Hugh further reasoned: "[w]*hereas the concept*

---

[2] <u>Brooks v. Gilmore</u>, 2017 U.S. Dis. LEXIS 127703 (2017)
[3] <u>Holland v. Unbited States</u>, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150, 1954-2 C.B. 215 (1954).

of reasonable doubt is grounded in a hesitation to act, here the court's example posited a situation creating strong motivation to act." *Id.* Consequently, relying on the District Court's guidance on this subject, it was engendered that the trial court's instruction injected an unacceptable level of concern, urgency and graveness and thereby raised the threshhold for what constitutes reasonable doubt.

By requiring for acquittal a doubt so strong and substantial that it would prevent a mother from authorizing surgery to save her child's life, again, the trial court relieved the Commonwealth of its high burden to prove guilt beyond a reasonable doubt. In **Cage v. Louisiana, 498 U.S. 39 (1990),** the U.S. Supreme Court held that use of the words "substantial" and "Grave" in the trial court's description of reasonable doubt unconstitutionally lowered the prosecution's burden of proof and "suggested a higher degree of doubt than was required for acquittal under the reasonable—doubt standard". *Id.* at 41.

The reason being, "[a] reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that requires by the Due Process Clause."*Id.* at 40. Petitioner emphatically asserts that it is no different in this case. **See also, Taylor v. Kentucky, 436 U.S. 478, 488 (1978)**(definition of reasonable doubt as a "substantial doubt" is confusing);

<u>Monk v. Zelez</u>, 901 F.2d. 885, 891 (10th Cir. 1990)(equating reasonable doubt with substantial doubt is improper); <u>United States v. Wright</u>, 542 F.2d. 975, 988 (7th Cir. 1979) any court including substantial doubt language in its reasonable doubt instruction "*can reasonably expect a reversal*"). There is no difference between using an improper example in the definition that requires a substantial doubt, as the trial court did here, and using an equally improper definition requiring a substantial doubt, as these Circuit Courts have routinely condemned.

In fact, using the above example of a dying child is far more stark and memorable than using the mere word "substantial" or "grave" for it forces each juror to place him or herself in the most dire circumstances to then ask, "What would you do?" To excuse the highly improper graphic image the trial court created by relying on the mere words Judge Hughes used elsewhere in her charge would ignore decades of social science research that teaches us that images are far more powerful than words.

With that said, the United States Supreme Court has gone as far as to hold that such an error is so egregious that it may never be considered harmless under the harmless error standard, no matter the strength of the state's case. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281 (1993). And Pennsylvania Supreme Court has likewise agreed that where such an error

occurs, prejudice is pesumed, **Commonwealth v. Chambers**, **546** Pa. **370,** **382, 685** A.2d. **96, 102 (1996)**; *see also*, **Sullivan v. Louisana**, **508** U.S. **275 (1993)** (The Court held that "*a misdescription of the burden of proof ... vitiates all the jury's findings.*").

The **Brooks** Court highlighted the Supreme Court's Opinion in **Sullivan,** *supra.*, with respect to elevating the level of doubt, as here, that violates clearly established federal law. Hon. Judge McHugh Opined that an instruction that contains both proper and improper charges can violate a petitioner's rights. *citing,* **Frances v. Franklin,** **471** U.S. **307, 315 (1995)** (Where a jury charge includes both proper and improper content, "the potentially offending words must be considered in the context of the charge as a whole"); **Whitney v. Horn,** **280** F.3d **240, 256** (3rd Cir. **2002)** (Though an instruction may in one place "correctly explain[]the law," it may in another contain a "constitutional flaw" that requires reversal); **United States v. Gorden,** **290** F.3d **539** (3rd Cir. **2002)**.

Petitioner's contention here is aligned with the District Court's Opinion whereas the problem with the trial court's instruction was that it omitted critical aspects of the governing standard. The governing standard commands a vote for acquittal if the juror "pauses" or "hesitates" before acting in a matter of the highest importance. The trial court's *instruction focused* solely on

giving the jury a poignant hypothtetical in terms illustration that was antithetical to the concept that was legally accurate. The trial court's instruction here prevented that juror from applying the more defendant-friendly "*hesitation*" aspect of the governing standard and directed her jury to rely exclusively on the more Commonwealth-friendly "refrain-from-acting" aspect.

To put it another way, "moving beyond" one's reasonable doubts, as the court's challenged instruction, is not the standard. To a particular juror, hesitating first even if he/she were later inclined to move forward, is enough under prevailing standard to vote for acquittal. The parent of the dying child might have a doubt about authorizing surgery because of her hesitation about its safty or efficacy. Under federal and state law, that is enough to constitute a reasonable doubt — sufficient at that moment to acquit in the criminal context — even if that parent ultimately decided to take her chances on the surgery.

The jury is presumed to follow the court's instructions. *Tedford*, 960 A.2d. *supra.* at 37. Therefore, no legitimate argument can be made that Common Pleas Judge Hughes was just riffing with some insignificant example of what constitutes a reasonable doubt that no juror would realistically take to heart.

The trial court's motives, however well-intentioned, do not control this question. **United States v. Moses**, 756 F.2d 329, 333 (4th Cir. 1985) ("added confusion is often created by these well-intentioned judicial efforts" to define reasonable doubt). Extensive legal discussion is not needed to establish the primacy in our system of the reasonable doubt standard and the importance of accurately defining it. *See*, **In Re Windship**, 397 U.S. 358, 361, 25 L.Ed. 2d. 368, 90 S.Ct. 1068 (1970); *qv*. **Commonwealth v. Cooke**, 852 A.2d. 340, 343 (Pa. Super. 2004).

Petitioner further plead and proved by showing the trial court's undermining the United States Supreme Court's reasonable doubt standard; the hypothetical jury instruction axiom was fatally flawed, as the rebuttal of the presumption of correctness of the transctipts was the crux of petitioner's state court appeal. Petitioner's state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt. *In Re Windship, supra. Also*, 28 U.S.C. § 2244(d)(1)

Because petitioner was denied a proper reasonable doubt jury instruction that impressed on the trier of fact the ability to reach a subjective state of certitude of the facts at issue; petitioner, by the United States Supreme Court's standards, would entitle petitioner to a grant of Habeas Corpus relief. *Id*. at **363-64**. Without the element of trial counsel's position to

protect petitioner's Constitutional Due Process Rights, the substantial trial error of counsel during trial has direct culpability under *Strickland* **et seq.**:

---

Trial counsel W. Fred Harrison, Jr. offered up no reason as to why he failed to object to either aspect of this improper jury instruction on reasonable doubt. *Strickland v. Washington*, **466 U.S. 468, 104 S.Ct 2052, 80 L.Ed.2d. 674 (1984)**, requires courts to grant relief where counsel's action "*fell below an objective standard of reasonableness* **(deficiency)** and where "*there is a reasonable probability that, absent counsel's errors, the fact finder would have had a reasonable doubt respecting guilt*" **(prejudice)** *Id.* **at 688, 695.**

Mr. Harrison's failure to object was memorialized in the record whereas he stated his cavil for the record as follows:

> **MR. HARRISON:** "...I could be objecting all morning but I'm just letting it move along."

**N.T. 7/14/08, (Trial), 53.** This was not a reasonable course of action. If the instruction was erroneous, as it clearly was, counsel's obligation is to object and preserve the issue. Federal and State Courts have decisively held that failure to object to an improper jury instruction can constitute deficient performance. **Everett v. Beard**, **290 F.3d. 500, 514-15 (3rd Cir. 2002)**, and that prejudice can result, **Thomas v. Verner**, **428 F.3d 491, 901 (3rd Cir. 2005)** (Courts have routienely declared assistance ineffective when the record

reveals that counsel failed to make a crucial objection."); **Carpenter v. Vaughn**, 296 F.3d 138, 158 (3rd Cir. 2002) (Failure to object to a "misstatement of Pennsylvania law on a point could play a crucial role in the jury's decision" resulted in prejudice). **28 U.S.C. § 2254(d)(1)-(2).**

Therefore, the United States Constitution under 6th and 14th Amendments preserves the roles of trial counsel to object to errors. Here, trial counsel blurred the lines when he made the above statement that he was purposefully omitting objections during trial that ultimately undermined the trial's outcome.

As for trial counsel's substantial error, as illustrated herein above, there is a reasonable probability that at least one juror would have had a reasonable doubt with respect to petitioner's guilt. **Buck v. Davis**, 137 S.Ct. 776, 197 L.Ed. 2d. 1 (2017). The reasonable doubt jury instruction was an objectively unreasonable substantial violation of petitioner's Constitutional Rights under both 6th and 14th Amendments. **28 U.S.C. § 2253(c)(2).**

The District Courts have opined that the emotionally charged sergical metaphor violated due process, thus, granting habeas corpus because the hypothetical elevated the level of doubt required for an acquittal; and, as this case *sub judice*, counsel failed to object. Therefore, his action undermined the conficence in the outcome of the trial. *Strickland*, 466 U.S. at 696.

21

## B. <u>The State Court Decision</u>

As petitioner previously stated, this ineffectiveness of counsel claim comprises of two parts as consistent with *Strickland v. Washington, supra.* notwithstanding *Buck v. Davis, supra.*: **(1)** the trial court's instruction required a grave or serious doubt in stead of reasonable doubt for acquittal and **(2)** the trial court's instruction omitted critical, more defendant-friendly aspects of the governing standard. Counsel failed to object to either one.

In the PCRA court's opinion, Judge Charles A. Ehrlich in his conclusory pronouncement conceded that trial counsel failed to object to the instruction; but shed no light on either aspect mentioned above. (**PCRA court opinion, May 27, 2020, \*6-10)(PCRA Op.**). The PCRA court simply offered up that Judge Hughes' instruction was "appropriate". As a part of the PCRA court's reasoning as to why the instruction is constitutional was because "the Superior Court has consistently upheld the instruction as constitutional" under a bevy of non-precedential cases: **Commonwealth** v. *Corbin* **(2016)**; *Gant* **(2009)**; *Johnson* **(2000)**; and *Clarkson* **(2004)**. (**PCRA Op.\* 8-9**).

However, the *Gant* case, as mentioned in the PCRA court's opinion, received a grant of habeas corpus on October 11, 2018 in the District Courts. The PCRA court's *dicta* that this claim was without merit inasfar as under *Brooks* progeny, the District Court Judge Hon. Gerald Austin M<sup>c</sup>Hugh, on

August 11, 2017, "*mischaracterized*" Common Pleas Judge Reneé Cardwell Hughes' language in her reasonable doubt charge to the jurors because she did not use the words "**grave uncertainty**" and/or "**substantial doubt**" as used in the *Cage*[4] Court. *Id.* at *10.

The PCRA court justified this Mother-authorizing-risky-surgery-for-her-dying-child instruction as appropriate, ignoring all the reasons petitioner put forth supported by controlling United States Supreme Court precedent as follows:

> "*Judge McHugh [t]hen summarily discounted our Pennsylvania Superior Court's affirming decision approving the legality of the subject reasonable doubt instruction given by Judge Hughes, writing that 'the ... decision involved both an unreasonable determination of facts as to what the dharge represented, and an unreasonable failure to recognize the principles established by [Sullivan] and [Cage].' In doing so, the federal district judge opined that our appellate court endorsed an 'improper application of [reasonable doubt] standard ... our Superior Court improperly endorsed an 'improper example' of reasonable* (sic) *double.*"

[PCRA Op.* 8-9].

The Suprior Court's panel analysis is equally unreasonable. The court adapted the PCRA court's opinion as the opinion of it's own; thus, sustaining that "Judge McHugh 'summarily discounted' ... Superior Court's ... decision."

---

[4] The fatally flawed failure to object by trial counsel was premised on the <u>*Brooks*</u> Court analysis of <u>**Cage v. Louisiana,**</u> **498 U.S. 39 (1991)** falling within the penumbra of the AEDPA's hypothetical jury instruction analysis; and counsel's failure to object thereto was an unreasonable determination of the facts outlined in the *Strickland* progeny and challenged as a unreasonable application of clearly established U.S, Supreme Court law therein. **28 U.S.C.§ 2254(d)(1)-(2).**

[**Slip Op.*5-6**]. The Superior Court's reasoning to this claim was:

> "The PCRA court has authored a thorough and well-reasoned
> opinion pursuant to [R]ule 1925(a). The Honorable Charles A.
> Ehrlich has addressed each of [W]ater's ineffectiveness claims
> with proper citation to legal authorities and citation to the
> certified record. As we discern no legal errors in Judge
> Ehrlich's analysis, and we find his factual findings and
> credibility determinations fully supported **by our review** of
> the record, **we adapt Judge Ehrlich's 1925(a) opinion as
> our own in affirming the order denying Waters post-
> conviction relief**. [*S]ee* PCRA Court's Opinion, 5/27/20, at *5-
> 11 (rejecting as meritless Water's claim that trial counsel was
> ineffective for failing to object to trial court's reasonable
> doubt instruction); at *11-12...".*Id*. at 5-6.

The panel simply avoided any analysis of the controlling law set forth

above, ignored any decussion about the challenged language of the

instruction, and offered up only the *non-sequitur* that the PCRA court's

analysis on the instruction was "*authored [a] thorough and well-reasoned

opinion pursuant to [R]ule 1925(a).*" *Id.* **at 5-6**. Petitioner's legal claim,

however, challenged the actual instruction and it's effect in accord with the

U.S. Supreme Court's precedents under [*Cage*] and[*Sullivan*], *infra.*. Based

on the record before us, the trial judge's intention may well have been to

encourage a conviction, as that surely is the natural effect of the words she

used. *Cf*. **Brooks v. Gilmore**, 2017 U.S. Dis. LEXIS 127703 *4 (2017).

The Superior Court relied on the *Rule 1925(a)* Opinion of the PCRA

court to sustain that Peititoner's claim here was without merit; however, the

PCRA court opined, with no analysis to the United States Supreme Court

24

cases under *Cage* and *Sullivan*, that the District Court's analysis by The Honorable Gerald Austin M^cHugh in **_Brooks_** *supra.* "summarily discounted" the Superior Court's affirming... endorsed an "improper example of reasonable doubt" for reasons mentioned above. *Id.*

It is particularly unreasonable and makes no logical sense to offer up explanations that the challenged portion of the instruction because it goes against the Superior Court's prior cases. The entire thrust of the challenged portion of the instruction is on *resolving* doubts and *moving forward* to convict — no matter how much those doubts may make one hesitate or refrain from acting — not on honoring one's doubts to comply with the fundamental principle — never mentioned by the court — that such hesitation by itself is enough to acquit.

If the trial court's true intention was as the Superior endorsed/devined, then Judge Hughes clearly would have simply instructed the jury in accordance with Pennsylvania's Standard Jury Instructions on reasonable doubt. Her devination from the Standard Jury Instruction to emphasize the act of moving beyond even the most serious and grave doubts one could harbor belies the Superior Court's attempt to excuse this fatally flawed instruction.

The state court's guess that by this "dying child" instruction offered by

Judge Hughes only intended to remind the jurors of the solemn nature of its deliberations is especially off the mark and objectively unreasonable. For a jury to have to consider an instruction, as a reasonable juror, to analyze the hypothetical life threatening condition affecting someone "*absolutely precious*" to a juror in the trial court's charge is a "misdescription of the burden of proof" and a powerful concept of an emotionally charged metaphor that elevated the level of doubt a juror must have before acquittal. This violation, petitioner posits, should vitiate all the jury's findings as a Due Process Violation. **E.g.**, **Sullivan v. Louisiana**, **508 U.S. 275, 281 (1993)**.

The state court further failed to give any analysis to the trial counsel's failure to object to the instruction inasfar as the court was impressed with the PCRA court's analysis; which gave no detailed reasoning as to how the counsel's failure was not the act of ineffective assistance, it focused on how the district court's analysis and not petitioner's pleading. However, the United States Supreme Court opined that if trial counsel, as here, performs deficiently by failing to challenge a defective reasonable doubt jury instruction, [n]o showing of prejudice is required. *See*, **Weaver v. Massachusetts**, **137 S.Ct. 1899, 1911 (2017)**; **Brooks**, **supra. at *7**.

The prejudice standard "is not a stringent one" and is "less demanding that the preponderance standard.". **Jermyn v. Horn**, **266 F.3d. 257 282 (3d.**

26

**Cir. 2001).** By the Superior Court's adoption of the PCRA court's opinion without any independent analysis; it abandoned any ability to make it's own analysis into petitioner's objection to this structural error by the trial court's misdescription of the reasonable doubt instruction. As a result, the Superior Court gave no analysis to this claim as outlined on pages 24-25 in petitioner's brief to said court.

The United States Supreme Court under the **Sullivan** progeny held that a defective reasonable doubt [instruction] is a "*structural error*" because "*a misdescription of the burden of proof ...* **vitiates** *all* **the jury's findings**" and has "*consequences that are necessarily unquantifiable and indeterminate.*" **Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993)**. With that said, the "life threatening" condition affecting someone "absolutely precious" to the juror was a misdescription of the burden of proof in accord with the U.S. Supreme Court standard on reasonable doubt; as this "dying child" metaphor was objectively unreasonable. *Cage,* **498 U.S.** *supra.* **at 39.**

Therefore, the Superior Court's decision was contrary to the above **Sullivan v. Louisiana, Cage v. Louisiana, Strickland v. Washington, In re Windship** and was involved in an unreasonable application of these clearly established federal case laws, as determined by the United States Supreme Court. **28 U.S.C. §§ 2255(d)(1)-(2).** In this case with only hearsay evidence of

27

guilt, this error had a substantial and injurious effect on the outcome. The writ should issue.

To that extent, trial counsel during trial admitted that he omitted his objections; therefore, it is clear that he had no strategic reason designed to advance petitioner's interest. With the ADA's letter to the jurist in the *Gant* case admitting that this identical claim is with merit, it can not reason that it is now constitutional. *See, Appendix A.*

## CLAIM TWO

## II. TRIAL COURNEL WAS INEFFECTIVE FOR HIS INADVERTENCE AND/OR IGNORANCE OF EXCULPATORY IMPEACHMENT EVIDENCE IN VIOLATION OF THE DISCOVERY RULE AND PETITIONER'S DUE PROCESS RIGHTS UNDER THE 14th AMENDMENT

### A. The Constitutional Violation

### I. Facts Plead and Proven in PCRA Proceedings

During trial on July 8, 2008, the Commonwealth built it's case on the circumstantial aspects of it's witness Erica Johnson. Her initial statement to the Police was that she never saw petitioner in possession of a firearm. **N.T. 7/21/08, (Trial)298-99.** Originally, petitioner's claim was grounded in *Brady/Weiss* progenies, whereas, the prosecution undermined the confidence in the outcome of the trial by hiding the fact that there was a gun found by investigators in this case.

This detail was important, as here, Ms. Johnson was critically important to the Commonwealth's case; there could not have been a conviction without her. No other witness, no other evidence put petitioner in the culpable role as a conspirator or any way established that petitioner shot the victim Kelly Sr.

This gun was not the average firearm. The firearm used in this murder was the service weapon of a Philadelphia Police Officer! During PCRA proceedings, petitioner engendered that the trial counsel was ignorant to the fact that this not-so-minor detail that there existed physical evidence linked to the Philadelphia Police Department was written off as nothing.

Under **Brady,** the prosecution is compelled to disclose to the jury impeachment evidence (*police issue Glock $9^{mm}$*) that may be material to petitioner's guilt , innocence and punishment affecting the Commonwealth's witness Erica Johnson's testimony. **Brady v. Maryland,** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963); *See also*, **Dennis v. Secretary,** 834 F.3d. 263, 281-82 (2016).

The firearm's probative value totally hinged on the testimony impeachment of Erica Johnson; inasfar as she made an initiating statement to the Philadelphia Police Department that she never saw petitioner with a gun. *Id*. Once this claim became ripe for PCRA challenge, petitioner

engendered the claim as presented during the PCRA proceedings. However, the Assistant District Attorney's puffery response to the PCRA changed the narrative of the claim to the PCRA court as "certain evidence" *et seq.*:

> "Appellant (petitioner) contends that his trial counsel should have presented to the jury evidence that the firearm purportedly used to murder the victim was found in possession of someone other that [appellant] himself..."

**(PCRA Op.\*3, 11).**

The PCRA court followed the ADA's narrative as if it were the actual **Brady** violation claim broached for consideration. However, the gun was actually in the the discovery presented to the trial counsel. Petitioner's gravamen was that the fact finders were not made aware that a gun was recovered and that it was the service weapon of a Philadelphia Police Officer.

What made it a discovery violation was that trial counsel sought to bring Detective Fenor of the Firearms Identification Unit (F.I.U.) in as a witness during trial and the court asked:

**THE COURT**: Do you have the flippin gun?

**MR. HARRISON**: No!

**ADA HAKLAY**: (Said nothing).

**N.T. 7/17/08, (Trial) 317.**

The Assistant District Attorney had a duty to speak up during trial to inform

the court that he did indeed provide the defense counsel with the **Brady** material. *See*, **Commonwealth v. Strong**, **604 Pa. 573, 583-85, 968 A.2d.808, 814-15 (2009)** (Relying on *Brady* to "respond affirmatively" to request for production of exculpatory evidence material to guilt or punishment of the accused). *See also*, **Kyles v. Whitley**, **514 U.S. 419, 433-34, 115 S.Ct. 1115, 131 L.Ed.2d. 490 (1995)**("*The Government's evidentiary suppression undermines confidence in the outcome of the trial.*").

The firearm, that belonged to a City Police Officer, was in the possession of the prosecution during trial, which was a Glock 9$^{mm}$ serial number **KD 418 US**. This firearm would have opened the door for multiple witnesses; including detective Fenor of the F.I.U., to testify as to the origins of the firearm, Raheem Stevenson, which the discovery shown that he went to jail for being in possession of the gun that the FCC was at the scene of the murder, The police officer with whom his service weapon was used in this murder, he may have had a nexus to one of the witnesses at petitioner's trial which given any reasonable juror reasonable doubt as to petitioner being a culpret in the murder.

During closing, the trial counsel told the fact finders that there is no evidence of a gun being recovered anywhere. This excluded from the jurors mind that there was no murder weapon found during the course of the police

investigation which was far from facts. Either trial counsel was ignorant to the fact there was a gun that was registered to the city; or he had no reasonable strategy to effectuate his client's interests. **N.T. 7/23/08,(Trial) 47.**

Petitioner plead and proved that there was a reasonable probability that the government's suppression of this Glock 9$^{mm}$ evidence could reasonably be taken to put this whole case in such a different light as to undermine confidence in the verdict. This undisclosed evidence would have affected the Commonwealth's witness' credibility which the government relied heavily on this witness to determine petitioner's guilt. *E.g.,* **The Jencks Act, 18 U.S.C. § 3500** *et seq..*

To bolster this predicate, initially, the initiating criminal complaint was based on Erica Johnson's statement to homicide detectives. In her initial statement, and during testimony, she stated that she never saw petitioner with a firearm. **N.T. 7/16/08, pp. 135-36;** *cf.* **Exhibit B.** The trial jurist intervened into Ms. Johnson's testimony and goaded her to testify differently that petitioner kept a dark colored gun in his home at some point aimed it at her head. **N.T. 7/14/08, pp. 81, 108;** *cf.* **N.T. 7/16/08, pp. 131-33.**

With the above supported by the record, petitioner proved that he was deprived a constitutional and fair trial inasfar as the decedent was murdered with a city owned firearm issued to a police officer. That the prosecutor failed

32

to disclose the gun or name of the registered officer that the Glock was issued to. This officer and Detective Fenor of the Firearms Identification Unit was omitted as witnesses during trial insofar as this was a purely circumstantial case.

With respect to **28 U.S.C. § 2254(d)(2)**, the state court sustained a decision that is based on an unreasonable determination of the facts whereas the *Brady* application rendered was objectively unreasonable in light of the evidence presented herein-above, whereas the presumption of correctness is hereby rebutted **28 U.S.C. § 2244(d)(1)** as guided by the Anti-Terrorism and Death Penalty Act. *See*, **United States v. Bagley**, **473 U.S. 677, 105 S.Ct. 3375 (1985)**; **Giglio v. United States**, **405 U.S. 150, 154 (1972)**; **United States v. Agurs**, **427 U.S. 97, 112 (1976)** (Discovery Violations).

---

Trial counsel's failure to investigate or even read the discovery material was a gross miscarriage of justice and objectively unreasonable. The defense counsel was ignorant to this pivotal discovery material and impeachment evidence that was material to petitioner's guilt and punishment. The Third Circuit in *Dennis* castigated the notion that the burden of proof should be on the defendant during trial. That defense counsel's purported obligation to exercise due dilligence to excuse the government's non-disclosure of the

[Glock] evidence as here, and rejected the concept inasfar as it would dilute the *Brady* mandate. **Dennis v. Secretary, 834 F.3d. 263, 281-82 (2016).**

However, although the burden of proof was not on the defense counsel, he was faced with the obligation to investigate the discovery material from the outset of trial. The probative value of the Glock 9mm was that it was easy to have discovered on or before trial that this gun was city owned and that the investigation from that point could have led back to a real person of interest instead of hiding evidence and gaining a conviction in contravention to the *Brady* mandate. *See,* **U.S. v. Gray, 878 F.2d 702, 712 (3d Cir 1989).**

In *Dennis,* the Circuit Court defined the Brady Doctrine with respect to habeas corpus as: "*[a]* petitioner was entitled to habeas relief under **28 U.S.C.S. § 2254** because, had **Brady** material in the commonwealth's possession — been disclosed, there was a reasonable probability that the outcome of trial would have been different." *Id.*

With respect to the United States Supreme Court, in accord with *Dennis,* the High Court has never recognized an affirmative due dilligence duty of defense counsel as part of Brady, let alone an exception to the mandate of Brady. Furthermore, Brady is absolute, it does not depend on defense counsel's actions. Brady's mandate and it's progeny are entirely focused on prosecutorial disclosure, not defense counsel's diligence. *See,*

*Dennis, supra..*

With the **Dennis Court's** *dicta* in tow, the trial court *sub judice* asked counsel W. Fred Harrison, Esq. to stipulate to waiving Detective Fenor of the Philadelphia Firearms Identification Unit (F.I.U.) as a defense witness. At first, Mr. Harrison declined. Then the Brady violation went on the record:

> **THE COURT:** Do you have the flippin gun?
>
> **MR. HARRISON:** No.
>
> **ADA HAKLAY:** [remained taciturned].

**N.T. 7/17/08, Trial, p. 317.**

The probative value of Detective Fenor of the F.I.U. would have been monumental in tipping the scale as trial counsel stipulated to waiving this witness by his ignorance to the service Glock 9$^{mm}$ (serial number KD 418 US): "*There is no evidence of a gun being recovered anywhere.*" **N.T. 7/23/08, Trial, p. 47. (Closing arguments).**

With this case being purly circumstantial, trial counsel omitted any chances of petitioner proving his actual innocence by his failing to investigate the discovery to discover that there was physical evidence that would have undermined any chance of a false outcome of petitioner's trial. Possible witnesses such as the Philly Police Officer, the owner of the murder weapon; Raheem Stevenson, whom did time for being in possession of that officer's gun

in accord to the discovery; Detective Fenor of the F.I.U. were also omitted. In light of all these potential witnesses, it is more likely than not that no reasonable juror would have convicted petitioner had the police gun been introduced. **Schlup v. Delo, 513 U.S. 298, 327-28 (1995)** (Actual Innocence).

The omission of these witnesses was a violation of **The Jencks Act., 18 U.S.C. § 3500** *et seq.*. The District Attorney's subterfuge of the name of the Officer associated with the murder weapon was a gross miscarriage of justice that undermined the elements of **Strickland v. Washington, 466 U.S. at 689,** *supra.*, and by failing to do any pre-trial investigations resulted in a fundamentally unfair trial such that there is a reasonable probability of a changed outcome, which satisfies the *Strickland* test *supra.*. Therefore, Mr. Harrison's errors was involved in an unreasonable application of established U.S. Supreme Court federal law. **28 U.S.C. § 2254(d)(1).**

## B. The State Court Decision

The state court's application of *Brady* was objectively unreasonable, which is clearly established federal law; whereas a fair minded jurist could disagree on the correctness of the state court's decision as outlined below:

None of the state courts in post conviction opinions explained the reasons relief had been denied. *Id*. Here, the PCRA court adapted the district attorney's pettifog: "[A]*ppellant contends that his trial counsel should have*

*presented to the jury evidence that the firearm purportedly used to murder the victim was found in possession of someone other than [a]ppellant himself.*". **(PCRA Op.\*3, 11)**.

The Superior Court, in making it's ruling, adapted the PCRA court's Opinion as it's own, whereas, the PCRA court made no references to petitioner's "*Brady/Weiss*" claims that the gun (and it's owner) was omitted from the jurors consideration of the facts of the case. *Id.*, **Slip Op. at \*4**fn. **2, 6.** The PCRA court, in a three paragraph misapprehension of the facts presented, responded that the jury was aware that petitioner was not to possess any firearms. There were no reference made to petitioner's Brady/Weiss claims. *Id.*, **(PCRA Op.\*11)**.

The PCRA court, in it's reasoning, posited that petitioner "confessed" [5] to his "girlfriend" [6] his culpability in the murder along with jealousy and threats; whereas this presumption was rebutted by the testimony of Roslyn Johnson, [7] of the "pattern of violence" to justify "overwhelming evidence"

---

[5] Petitioner never made a statement to the police or anyone else to substantiate this allegation of "confession" as implied by the Assistant District Attorney and sustained by the PCRA court *et al.*.

[6] During the entire year of 2004, the year of the murder, petitioner and Commonwealth witness Erica Johnson were not romantically involved. Erica's mother testified that her daughter was living at home and packed cloths to stay with petitioner "for a couple days until stuff cools down." N.T. 2/9/07, pp. 39-40, 159-60, 181-82, 195-97, 201-03; *Cf.*, 7/21/08, (Trial) pp. 12, 108, 146, 152, 268-71.

[7] Commonwealth witness Erica Johnson's mother.

presented at trial. *Id.*, at *12.

This sparse opinion by the PCRA court, as adapted by the Superior Court in it's six pages thereto; opined that petitioner "*failed to raise any of these more 'specific claims' in his* [concise] *statement, they are waived...*" *ante.*, [Slip Op. at *4fn. 2]. However, the Superior Court implied that the reason these claims were waived was because petitioner did not file a response to the PCRA court's Pa.R.Crim.P. 907(1) dismissal notice. *Id.*, at *3.

This case has absolutely no evidence whatsoever. The premies of the prosecutions case was based primarily on the inconsistent testimony of it's witness Erica Johnson. To bolster the importance of this witness, the ADA, during trial, conceded towards the end of his prosecution that he did not know who was the murderer in this case by the following monologue:

> **HAKLAY:** Well, what about the fact that you (prosecution) haven't proved who fired that gun? Was it Kevin? was it Gerald? (petitioner) And that's a relevant, perfectly good question. And the answer is, **it dosen't matter.**

{N.T. 7/24/08, (Trial) pp. 71-73].

Another revelation of the prosecution's record admission as to the

---

[8] To the contrary, petitioner attempted to correct this erroneous judicial decision by the Superior Court by filing a Reconsideration/Reargument motion. The motion exhibited that petitioner's rights under the Anti-Terrorism and Effective Death Penalty Act and other federal and state constitutional rights were being overlooked inas far as petitioner had filed a response. This denial resulted in a decision that was contrary to federal and state law as outlined therein.

credibility of the gun evidence furthered in the record *seraitim*:

> **HAKLAY:** ...possessing an instrument of crime (Glock 9$^{mm}$). And again, because of accomplice liability, it doesn't matter who had — the instrument of crime is a gun. Obviously here. Dosen't matter who fired. He fired, Kevin fired. He's guilty of murder because they're together and they're doing it together.

**[N.T. 7/23/08, (Trial) p. 153].**

With petitioner's actual innocence asserted, it is clear here that the PCRA and Superior Court's opinions missed the nail with respect to it's analysis that: "*The Honorable Charles A. Ehrlich has addressed each of Waters' ineffectiveness claims with proper citation to legal authorities and citation to the certified record.*" (**Slip Op. at \*5**).

In the present case, the state court did far more than simply issue a summary affirmance. Instead, the Superior Court wrote a six-page decision summarily addressing each of petitioner's issues in contravention of the PCRA court's Opinion; for which, the Superior Court adapted as it's own. *Id.* The Supreme Court of the United States recently addressed a similar issue in *Wilson v. Sellers*, **138 S.Ct. 1188, 200 L.Ed. 530 (2018).** The High Court held that even in summary affirmances, the federal court must "*look through*" the state court opinion to the next highest state court to address the issue. *Id.* at 1190; *see also*, **Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed. 2d. 706 (1991)**(unexplained orders upholding a judgment of a lower

court are presumed to rest on the same ground).

Therefore, the fact that the lower court waived any claim under the independent state law doctrine, it made petitioner's claims ripe for *de novo* review inasfar as it failed to adjudicate petitioner's **Brady/Weiss** claims as properly and fairly presented to the state court. In other words, with the Commonwealth's Attorney's admission during trial that they have not proven who shot the victim; coupled with petitioner did not default on this issue by not raising it in his first PCRA petition. **28 U.S.C. § 2254(b)(1). AEDPA** bars a federal court from granting a claim "unless it appears that the [] applicant has exhausted the remedies available in the courts of the State. *Id.* at **(b)(1).**

Therefore, the Brady material which is a Glock 9$^{mm}$ firearm, which was impeachment evidence of it's own witness, to comply with *Brady*, prosecutors had a duty to "disclose [Brady] evidence ... even though there has been no request [for the evidence] by the accused," which may include evidence known only to police. ***Strickler v. Greene* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed. 2d. 286 (1999);** *see also*, **Kyles v. Whitley, 514 U.S. 419, 438 (1995).** *Citing Dennis supra.*

To comply with Brady, *prosecutors must "learn of any favorable evidence known to the others acting on the government's behalf ... including the police."* ***Strickler*, 527 U.S. at 81.** The evidence at issue must meet three

critical elements. *First*, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Id. at 281-82; see also* **United States v. Bagley**, **473 U.S., at 676**; ("impeachment evidence..., as well as exculpatory evidence, falls withing the *Brady* rule."). *Second*, it "must have been suppressed by the State, either willfully or inadvertently." **Strickler, 527 U.S. at 282**. *Third*, the evidence must have been material such that prejudice resulted from it's suppression. **Banks v. Dretke, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed. 2d 1166 (2004)**.

The touchstone of materiality is a "*reasonable probability*" of a different result." *Kyles*, **514 U.S. at 434**. Materiality "does not require demonstration by preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendent's acquittal . . . [Rather], [a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id*.

However, as here in the current case, the undisclosed *Brady* evidence was admissible because it impeached the commentary of all the Commonwealth's witnesses by a more viable witness such as the Philadelphia Police Officer with whom his service weapon was used in this murder. The omitted Glock 9$^{mm}$ firearm was hidden in opposition to the Jencks Act's

discovery rule, whereas, Raheem Stevenson was found to be in possession of this firearm on November of 2004 and subsequently convicted of being in possession of the firearm used in this crime. This weapon could have led to the discovery of other admissible evidence that could have made a difference in the outcome of petitioner's trial sufficient to establish a reasonable probability of a different result and establish petitioner's actual innocence.

When the state court sought the trial counsel to stipulate to the FCC ballistics because defense counsel's ignorance of the firearm being in the discovery. The trial court asked:

> **THE COURT**: Do you have the [f]lipping gun?
>
> **MR. HARRISON**: No.

**N.T. 7/17/08, (Trial) p. 317-19.**

Subsequently, at the behest of the trial court jurist, Mr. Harrison stipulated to the ballistics report and deprived petitioner out of Dectective Fenor of the Firearms Identification Unit as a defense witness. **N.T. 7/21/08, (Trial) p. 178.** Thereafter, the trial court acknowledged the Glock 9$^{mm}$ as the "alleged"/"purported" weapon used in this murder. **[Slip Op.* 6]; [PCRA Op.* 11].**

During trial, the FCC of the murder weapon was not the subject of adjectives. *Id.* In **Deleware v. Van Arsdall**, **475 U.S. 673 (1986)**, the U.S.

Supreme Court reasoned that the Sixth Amendment is violated when the defendant is "prohibited from engaging in otherwise appropriate cross-examination designed '*to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the* [Commonwealth's] *witness*'". *Id.* at 680.

Here, Erica Johnson was critically important to the Commonwealth's case in chief; whereas there could not have been a conviction without her. So, the pivotal question is whether the state court's application of the *Brady* standard unreasonable? **Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed. 2d. 624 (2011).** The state court's erroneous determination of the issues herein above within the ambit of **Brady, Strickland, Harrington, Wilson, Ylst, Strickler, Kyles, and The Jencks Act** *supra.* was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings. **28 U.S.C. § 2254(d)(2).**

The Anti-Terrorism and Effective Death Penalty Act dictates this manner in which the District Court conducts review. Federal Courts can not grant relief with respect to any claim that was adjudicated on the merits in State Court unless it resulted in a decision that was contrary to established law by the Unted States Supreme Court. The lower Court's analysis here is clearly an unreasonable application of Brady under **28 U.S.C. § 2254(d)(1).**

Because the city owned firearm was evidence that would have impeached the Commonwealth's star witness, and this being a circumstantial case, the state courts erred in their summary affirmance of petitioner's PCRA denial because the state court's determination, when viewed under the standard set-forth in the **AEDPA § 2241**; involved an unreasonable application of federal law as determined by *Brady*. *See* **Brown v. Wenerowicz, 663 F.3d 619, 627 (3d. Cir. 2011).**

Furthermore, the state court stated that it analyzed petitioner's state and federal claims, thus, rejecting the federal claims under the pretense that the claims were waived, but gave no indication on how it reached it's decision. **Id.** § 2254(d)(1). **Han Tak Lee v. Glunt**, 667 F.3d 397, 403 (3d. Cir. 2012). *See also*, **Cullen v. Pinholster**, _____U.S._____, 131 S.Ct. 1388, 1398, 179 L.Ed. 2d. 577 (2011)(A state petitioner carries the burden of proof in rebutting the presumption of correctness of a state court's record...).

The panel and the PCRA court gave no mention to the Brady/Weiss material, even changing the narrative of petitioner's PCRA claims. The state courts should have acknowledged this fact rather than disregard it. In a case with one minor eye witness that was tainted, and his mother, with whom was not a witness, counsel's utter failure to seek the exculpatory impeachment evidence was serious and a meaningful violation of the Six Amendment

guarantee of effective counsel.

The state courts' decision here was further contrary and was based on an unreasonable determination of the facts and involved an objectively unreasonable application of **Strickland v. Washington** supra. 28 U.S.C. . § **2254(d)(2).** Inasfar as, the state court's decision reflected a misunderstanding of the impeachment value of the 9$^{mm}$ firearm in contrast to the Commonwealth's key witness Erica Johnson alone. *see* **(Slip Op.*5-6).**

With regard to prejudice, the Superior Court, in sustaining the PCRA courts' antithetical decision thereto, both PCRA and Superior Courts rational is irrelevant at this juncture, petitioner points out that in its Opinion put forward different reasons to deny relief on this claim, all of which avoids any analysis to the controlling U.S. Supreme Court precedents associated with *Brady* with equal force. *E.g.,* § 2254(e)(1).

Under the previously discussed controlling state and federal laws under Brady/Weiss, all of which was presented to the lower court but none of which the court discussed; it came to a conclusion that can not be considered harmless error because this goes to the fact that petitioner was entitled to a fair trial. This error, the Supreme Court has deemed, was structural, due to the nature that the witness could have been impeached by the police officer that owned the murder weapon. **Neder v. United States**, 527 U.S. 1, 8 (1999).

## CLAIM THREE

**III. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE TRIAL COURT'S CUMULATIVE ABUSES OF DISCRETION; MIS-APPLICATION OF LAW; AND HIS FAILURE TO SEEK DISQUALIFICATION OR RECUSAL OF THE PRESIDING JURIST DUE TO THE PARTIALITY AND BIAS THAT UNDERMINED THE CONFIDENCE IN THE OUTCOME OF TRIAL**

---

### A. The Constitutional Violation

### I. Facts Plead and Proven in PCRA Proceedings

In consonance to the penultimate claim herein-below, the prosecution in this case admitted that he hadn't proven his case. *Id.* **N.T. 7/23/08, p. 153; N.T. 7/24/08, pp. 71-73.**[9] The premise of petitioner's actual/factual innocence claim was based on defense counsel's failure to object to the trial jurist's abuses of discretion as outlined in the state courts below, and now this District Court.

The trial court's pro-Commonwealth and anti-Defendant atmosphere during trial was evident to the fact finders whereas petitioner did not violate the murder statute by the facts presented to the courts by the District Attorney. *E.g.,* **Fiore v. White**, 531 U.S. 225, 226-29, 121 S.Ct. 712, 713-14,

---

[9] Although petitioner did not challenge the "unnamed persons" jury instruction as a violation, petitioner outlined that the trial jurist offered the prosecution to help prosecute petitioner in this case. **N.T. 7/15/08, p. 69.** The trial court, knowing of the Commonwealth's "*overwhelming evidence of guilt*" theory rested on the petitioner purported "*I...had Kevin kill Aaron*" substantive statement during a visit to the federal jail; the trial court's confusing "*It is irrelevant that no one else is on trial before you...Gerald waters conspired with 'other unnamed persons'*" helped the prosecutions case. **N.T. 7/24/08, pp. 71-73.** *Id.*

148 L.Ed. 2d. 629 (2001); <u>Bousley v. United States</u>, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611, 140 L.Ed. 2d. 828 (1998).

To support these issues presented to the PCRA; Pa. Superior and Supreme Courts, petitioner outlined the bias that was overtly on the sleeve of the trial when Judge Reneé Cardwell Hughes entertained prosecuting petitioner seraitim:

> **THE COURT:** Want me to help you (*prosecute*)?
> **ADA HAKLAY:** No, that's Okay.
> **MR. HARRISON:** No Judge.
> **THE COURT: I always help you. I save you (ADA)**
> **on a regular basis.**

N.T. 7/14/08, (Trial) p. 61.

Prior to that statement, the trial jurist, as evinced by the record, created a fictional "*Gene Mayer*" progeny allegedly by the Superior Court, to sustain why said court permitted the prosecution to ask leading questions during cross-examination of witness Erica Johnson. **N.T. 7/11/08, (Trial) pp. 90-95.** Furthermore, the trial court made due on her promise to help ADA Gonen Haklay when the court cut witnesses off and testified on their behalf; even giving them their testimony. *Infra*.

After the offer to help ADA Haklay by the trial court, Commonwealth witness Erica Johnson testified that she alone went to get her child from the crime scene after the murder; the jurist quickly interjected:

>    **THE COURT:** No, No, No. You told your aunt Laura on the
>                        phone: I'm going to send Gerald to get ......".

**N.T. 7/14/08, (Trial) p. 232.** [10]

In furtherance, Commonwealth witness Roslyn Johnson's trial testimony that her daughter only lived with petitioner for a total of three months contradicted her daughter's testimony that there was never a time that she did not live with petitioner. The trial court goaded Roslyn to change her testimony. **N.T. 7/18/08, (Trial) pp. 169-71.**

Throughout the entire trial process, trial counsel plead with the judge to not help the prosecutor in his prosecution by the following monologue:

>    **MR. HARRISON:** Judge, don't give her (Erica) the answer.
>    **N.T. 2/9/07, (Motion) pp. 96-97;**
>
>    **MR. HARRISON:** ... Now, the judge gave you (witness) a
>                            good scenario of what happened ...
>    **N.T. 2/9/07, (Motion) pp. 173-74;**
>
>    **MR. HARRISON:** You're helping too much, Judge.
>    **N.T. 2/9/07, (Motion) p. 151;**
>
>    **MR. HARRISON:** Keep going Judge!
>    **THE COURT:** Baby, I'm just clarifying.
>    **N.T. 7/16/08, (Trial) p. 225;**
>
>    **THE COURT:** *Oh, oh, okay. Let me help you ...*
>    (Cutting defense counsel off to testify on Erica's behalf). [11]

---

[10] Defense counsel W. Fred Harrison, on several occasions asked Judge Hughes not to give the witnesses their testimony. **N.T. 7/14/08, (Trial) pp. 82-83, 93-94, 107-08, 117-33, 160-62; N.T. 7/17/08, pp. 14-15, 30-31, 57-58, 99-103, 179-84, 272-74; N.T. 7/18/08, pp. 168-70.**

[11] *Id.*

**FRED HARRISON:** Okay. One other thing, Judge, my client wanted me to put on the record that the court is consistently asking questions.
**N.T. 7/21/08, (Trial) p. 299.**

Petitioner further plead and proved that the offer of help and the actual help by the trial court was prejudicial to the trial inasfar as the Commonwealth's case in chief rested on the predicate that the star witness Erica Johnson lived with petitioner and witnessed guns and text messages go out to the decedent around the time of the murder. **N.T. 7/16/08, (Trial) pp. 84-85.** The court's intervention into testimony was the abuse that pressured Erica, *et al.* to testify in a way favorable to the prosecution. *Id.* **at p. 131.**

To bolster petitioner's material issues of fact that Ms. E. Johnson did not live with petitioner, her child, in his own words during testimony, testified that he did not see nobody other than his father on the night he died. **N.T. 7/10/08, (Trial) pp.80-86.** He further testified that he only remembered living with petitioner "*for a few days*" after the homicide. *Id.* **at p. 87; N.T. 7/14/08, p. 128.**

There was a time that the decedent's mother Debra Kelly-Coakley drove past the Federal Detention Center on 6th and Arch Streets going to a movie theater on Delaware Avenue; whereas, little Aaron was overheard saying: "*That's the jail Gerald is in... I don't like him anymore ... because he killed my dad.*". Ms. Coakley asked little Aaron: "*Who told you that?*" Little

49

Aaron's immediate response was: "*My Mom...*". N.T. 7/17/08, (Trial) pp. 170, 206, 237.

What's more troubling about this purported substantive statement by the direct witness was; during his video testimony, he mentioned nothing about petitioner's involvement in his father's homicide. Instead of asking questions about what Little Aaron recalled that night, the ADA Gonen Haklay grilled the minor on tape; and because counsel failed to object, petitioner made a record pro se *Lawyerly objection*. N.T. 2/9/07 (Motions) pp. 242-43.

During trial, ADA Haklay made a record that the trial court had ordered him to delete language to the Tender Years tape recording that he objected to presenting to the jury the year before *seraitim*:

> **HAKLAY:** I think there is no problem. We (*ADA*) want to put on the record, as you (*Judge Hughes*) recall, when I gave you Aaron junior's little thing (*taped testimony*), you can hear what we know as Gerald's (Petitioner) voice saying: "*he's leading the witness,*" ... so ... Your Honor .... because you asked me to, to **get rid of it.**

> **THE COURT:** ..and while we know it is Gerald's voice, the jury may not ... They may think it is you. Mr. Harrison.

> **FRED HARRISON:** ..I made an objection.

> **THE COURT:** But the objection is preserved preemptively.

N.T. 7/21/08, (Trial) pp. 155-58; 7/09/08, 16-17.

In the <u>Dougherty</u> progeny of the Pennsylvania Supreme Court, it wrote a scathing Opinion in 2011 that castigated the repugnant acts of Judge Reneé Cardwell Hughes' abuses of discretion in seeking a [court reporter] to remove comments from the [trial] record that she deemed "non-judicial". The Pennsylvania Supreme Court further wrote:

> "Litigants and the appellate courts alike have but one vehicle through which to examine a trial court's proceedings for potential irregularities: the certified record. Therefore, to alter a record is to strike at the very pillars of meaningful appellate review, and concomitantly therewith, the basic tents of due process."

**<u>Commonwealth v. Dougherty</u>, 610 Pa. 207, 209, 18 A.3d. 1095 (2011).**

The Pennsylvania High Court outlined that Judge Hughes' "*de minimis excuse*" to rationalize transcript alteration was "*reprehensible and should be condimned universally.*" *Id.* at 211-212. The Opinion of the Court included the "*inappropriate*" comments [12] coupled with the *sub silentio* alterations of a transcript as an infringment of due process, whereas, here, petitioner rebutted the presumption of the correctness of the transcripts for the purpose of **28 U.S.C. § 2244(d)(1);** insafar as the record is contrary to and involved in an unreasonable application of clearly established federal law as in **<u>Griffin v. Illinois</u>;** and **<u>Mayer v. City of Chicago</u>,** *infra.*

---

[12] Judge Hughes, during trial, in front of the jury called petitioner a "*sucka*" amid it's rulings. This is "Southern" profane language for "fucker"! In using this language, she further threatened counsel to conclude his cross. N.T. 7/17/08, (Trial) pp. 316-17.

51

The appearance of impropriety here was sufficient to warrant the trial judge's disqualification by the standards of the Pennsylvania Supreme Court in *Dougherty supra..* With the above example of the trial court's attempt to goad defense counsel's participation in deceiving the jury into thinking that the objection made to the prosecutor's misconduct during Tender Years testimony of the minor witness, petitioner posits, was an abuse of discretion that undermined the confidence in a fair trial and objectively unreasonable.

With the record replete above, the trial court's *sub silentio* alterations of the transcripts in the present case was a decision by the state court that was contrary to and involved in an unreasonable application of United States Supreme Court cases *Griffin* and *Mayer* inasfar as, the dictum there under these progenies states that: "...*the State must provide full, verbatim record*" of the trial transcripts. **Griffin v. Illinois**, 351 U.S. 12, 19 (1956); **Mayer v. City of Chicago**, 404 U.S. 189, 195 (1971).

The unavoidable effect of the conduct and language mentioned herein-above was that it prejudiced the factfinders to the extent that they were rendered incapable of fairly weighing the evidence and entering an objective verdict. The prosecution, at the behest of the trial jurist, altered the trial record. In light of all the above evidence of abuses of discretion by the trial court; it is more likely than not that no reasonable juror would have convicted

petitioner, *i.e.*, the trial transcripts alterations has probably resulted in the conviction of petitioner who is actually innocent. **Schlup v. Delo**, 513 U.S. *supra*. At. 226-29; **Wright v. Vaughn**, 473 F.3d 85, 92 (3d. Cir. 2006).

Because petitioner was denied a fair trial and appellate review under post conviction proceedings; this fatally flawed error prejudiced trial counsel from presenting a constitutional defense consistent with the 6th Amendment. Therefore, the presumption of correctness of the transcripts are rebutted inasfar as petitioner's state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt with respect to the above cumulative abuses of discretion. *In Re. Windship, supra.* 28 U.S.C. § 2244(d)(1).

---

Trial counsel W. Fred Harrison offered up no reason as to why he failed to object to the multiple facets of the trial court's offer to help the prosecution prosecute from the bench. **N.T. 7/14/08, (Trial) p.61.** *Id.* As mentioned in the penultimate rubric, Under the *Strickland* progeny, this Court is required to grant relief where counsel's action "*fell below and objective standard of reasonableness*" (**deficiency**) *Id. at 688*, and where "*there is a reasonable probability that, absent counsel's errors, the fact finder would have had a reasonable doubt respecting guilt.*"

The trial court recognized this fact that the trial counsel was omitting his objections by the following:

> **THE COURT:** ...And there were some things that Fred (defense counsel) could have objected to. I .... But I do think there were some thngs that Fred could have legitimately objected to, **and he didn't.**

**N.T. 7/15/08, (Trial) p. 69.** This lack of reasonable course of action was admitted to by the trial counsel during trial the day before the trial court made the above record. Trial counsel stated on the record that he could have been objecting all morning but he was letting it go along. **N.T. 7/14/08, (Trial) p. 53.** *Id.* 28 U.S.C. § 2254(d)(1)-(2).

The trial court also attempted to make a ruling that petitioner somehow waived a claim of ineffective assistance of counsel by the following judicial statement during trial:

> **THE COURT:** There can be no claim of ineffectiveness or no claim of error because Mr. Waters waived it. *Id.*

**N.T. 7/18/08, (Trial), p. 130.** The trial court, petitioner posits, was aware that the defense counsel was ineffective during trial but failed to do anything about it. Trial counsel failed to seek the trial judge's recusal beause she, amid screaming and calling petitioner a "sucka/sucker" in front of the jury, told the counsel that she would make Mr. Harrison a "defendant" if he did not finish his cross examination of the Commonwealth's witness. **N.T. 7/15/08, (Trial),**

p. 11; 7/17/08, (Trial), pp. 308-15.

With respect to counsel's failure to object to the trial court's testifying on the behalf of all the Commonwealth's witnesses; counsel failed to do anything but to offer up farce like cavils. In accord to the Strickland progeny, trial counsel's substantial errors, as outlined herein-above, undermined the confidence in the outcome of petitioner's trial and his actions were objectively unreasonable. With that said, there is a reasonable probability that at least one juror would have had a reasonable doubt with respect to petitioner's guilt had he objected to the cumulative abuses of discretions by the trial court. **Buck v. Davis**, 137 S.Ct. 776, 197 L.Ed. 2d. 1 (2017); *Strickland*, 466 U.S. *supra*. **at 689.**

---

## B. The State Court Decision

This case involves the *sub silentio* alteration of petitioner's transcripts. By Ordering both the stenographer and the prosecutor to remove testimony that was "*less than judicial*" by the trial court's own admission; the state court violated the Due Process Clause and denied petitioner adequate appellate review. By failing to transcribe this critical protion of the trial, it appears petitioner's fundamental right to liberty as defined through a fair trial, suffered the stain of bias.

The PCRA court's opinion, as consolidated with the Superior Court's analysis; offers up the conclusory statement that: *"The PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a)."* **[Slip Op.\*5; PCRA Op.\* 12-13].** The court not only cited no legal authority for this non-existent legal proproposition, it also failed to address the United States Supreme Court authority petitioner did cite that would hold that a constitutional violation occurred here.

In affirming the PCRA court's three paragraph denial of this claim, the Superior Court panel went in a different direction. The panel first cited the PCRA court's Opinion as it's own reason for rejecting PCRA relief. **[Slip Op.\* 5]** *Id.* The panel then went outside of it's own ruling to state that this claim was waived because petitioner failed to raise these *"more specific claims"* in his *concise statement.* **[Slip Op.\*4, fn. 2].** However, this analysis was not the ruling of the PCRA court's *"well-reasoned opinion"* for which the Superior Court panel adopted as it's own. **[Slip Op.\* 6].**

Trial counsel here, clearly ineffective for failing to subvert the trial court's multiple prejudices by objecting to these errors; petitioner posited, was at least of arguable merit for the trial court's *sub silentio* transcript alterations, conjoined with the court's offer to prosecute petitioner was clear bias. The panel, as the PCRA court, never ruled or addressed the authority

petitioner did cite. Without mentioning even one United States Supreme Court case petitioner did cite holding that *prejudice is presumed* where a trial judge alters the transcripts thus hindering appellate review, or without analyzing how counsel's failure to lodge an objection transforms what the Supreme Court characterized as a structural defect into something else, the state court panel injected a requirement of having to be "*more specific*" in filing claims in a concise statement which is impossible to meet as a Due Process requirement for preservation. *Id*. *Mayer*, infra., *Dougherty*, supra., [Slip Op.*4, fn. 2] *cf.* N.T. 7/21/08, Trial, p. 324; 7/25/08, p. 6.

This panel's ruling is both contrary to and involved in an unreasonable application of clearly established federal law as set by the United States Supreme Court. The unreasonable application clause of **§ 2254(d)(1)** is met where the state court unreasonably refuses to extend a legal principle from established Supreme Court precedent where it is warranted. **Williams v. Taylor**, **529 U.S. 362, 408-09.** Here, the state court acted unreasonably in completely ignoring the reasons why prejudice is presumed in altering transcripts; testifying on behalf of witnesses; and seeking to prosecute on the behalf of the prosecution and then ignoring the federal laws engendered.

The state's High Courts unexplained summary affirmance of the PCRA court's collateral relief denial was legal error that undermined petitioner's

appeal. **Wilson v. Sellers**, 138 S.Ct. 118, 1190 (2018). The Superior Court panel unreasonably refused to extend the *Strickland* principle from the established federal precedent where it is petitioner's contention that counsel was ineffective for his failure to object to the court's cumulative abuses of discretion. With that said, the state post conviction court panel simply ignored all the evidence of the record, thus relying upon the PCRA court's succinct and erroneous determination, § 2254(d)(2); **Strickland**, **Id**. at **689**.

Given the omission of record bias, the trial counsel's admitted failure to object, or counsel's failure to seek the trial jurist's recusal due to said admitted biases; the confidence in the verdict was greatly undermined. **Strickland**, *Id*. The Supreme Court has identified several circumstances in which prejudice results from a violation of the Six Amendment right to counsel which is presumed. *See*, **Bell v. Cone**, 535 U.S. 685, 696, 122 S.Ct. 1843 (2002) (quoting **United States v. Cronic**, 466 U.S. 648, 658, 104S.Ct. 2039, 80 L.Ed. 2d. 657 (1984), as having identified: ("*three situations implicating the right to counsel that involved circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified*"). [13]

---

[13] These presumptively circumstances are as follows: (i) when the accused suffered a complete denial of counsel at a critical stage of trial; (ii) when counsel entirely failed to subject the prosecution's case to a meaningful adversarial testing; (iii) when the circumstances are such that no lawyer, even a fully competent one, would have been able to provide effective assistance to the accused during trial. **Cronic**, at **659-60**.

On appeal, petitioner argued that the PCRA court's failure to address these cumulative abuses; notwithstanding, trial counsel's admitted denial of counsel by his failure to object. *Id.* **N.T. 7/14/08, p. 53**. The Superior Court panel affirmed the PCRA court's dismissal of the PCRA petition without ever addressing none of the above abuses of discretions in a six (6) page opinion adapting the PCRA court's opinion as it's own. However, neither PCRA court or Superior Court addressed or discussed none of petitioner's detailed U.S. Supreme Court analysis mentioned herein above. [**Slip Op.\* 1-6**].

As here, it does not appear that the state court ruled on whether trial counsel's performance was deficient. Reading *Buck v. Davis*, and *Strickland v. Washington*, together, the Supreme Court has held that a state must not deprive a criminal defendant of a 6th Amendment Right to counsel; **Strickland, 466 U.S. at 694**, *i.e.*, "a reasonable probability" that would "underrmine confidence in the outcome" of a fair trial. *See, **Buck v. Davis**,* 137 **S.Ct. 759, 776, 197 L.Ed. 2d. 1 (2017)**("*A reasonable probability is that at least one juror would have harbored a reasonable doubt*" with respect to [petitioner's] guilt.").

Had the trial judge not ordered the prosecution and the stenographer to take the "*less than judicial*" bias language out of the record, as Pa. Supreme Court has disparaged in it's ***Dougherty*** progeny; the stenographer would have

transcribed this critical protion of the trial. *Id*. **N.T. 7/25/08, p. 6.** The state court violated the Due Process Clause and denied petitioner adequate appellate review by the act of omitting the trial transcripts; and the Pa. Superior and Supreme Court panels refusing to entertain petitioner's PCRA petition thereto.

While petitioner does not have the federal constitutional right to collateral review, once the state provides such review it must do so fairly, in accordance with the process the state has set up for all. Moreover, the state court's ruling, when read in light of *Mayer* and *Griffin*, infra., is both contrary to and an unreasonable application of this established body of Supreme Court law. **Mayer v. City**, **404 U.S. 189, 195 (1971); Griffin v. Illinois, 351 U.S. 12, 19-20, 100 L. Ed. 891 (1956).**

The United States Supreme Court held that a criminal defendant is entitled to a full, verbatim transctipt. *Id*. **404 U.S. at 195; 351 U.S. at 19.** Where a defendant's grounds for error make out a colorable need for a complete transcript, the burden is on the state to show less will suffice. *Id*. It is well established that the federal constitution requires that when the right to appeal a judicial order is granted, there must be a record sufficient completeness to permit "proper consideration of [petitioner's] claims", and adequate and effective appellate review. *Id*., **404 U.S. 189; 351 U.S. at 20.**

With the state court's unwillingness to entertain petitioner's trial court error and ineffectiveness of counsel claims under *Strickland* and *Buck*; petitioner's appellate review and Due Process Rights are hampered. Moreover, the state court's decision to the contrary was based on an unreasonable determination of the facts and involved in an unreasonable application of **Strickland v. Washington**; **Mayer v. City of Chicago**; and **Griffin v. Illinois**. Therefore the presumption of correctness of the transcripts are rebutted and petitioner contends that he is being held in state custody in violation of the Federal Constitution as a result of being denied his right to a fair trial, and a complete and adequate appellate review.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons set-forth herein, petitioner, Gerald Waters, *pro se*, respectfully requests that this Court direct the Commonwealth to file an Answer to this Petition, grant petitioner the right to conduct discovery, convene an evidentiary hearing, and grant relief in the form of a new trial or award such other relief as the Court deems appropriate.

Respectfully submitted,

BY: _____

Gerald Waters, Pro Se

Dated: April 7, 2023

61

U.S. POSTAGE PAID
FCM
MARIENVILLE, PA
15239
APR 07 '23
AMOUNT
**$0.00**
R2305M144596-02

19106

RDC 04

CERTIFIED MAIL®

7021 0950 0001 8670 3199

neopost
04/07/2023
US POSTAGE **$020.55**⁰
ZIP 16239
041L12205275

INMATE
MAIL

U.S.M.S.
X-RAY

APR 11 2023

Clerk
UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT of Pennsylvania
601 Market Street, Room 2609
Philadelphia, PA. 19106

GERALD WATERS HR-4066
SCI FOREST, BOX 945
286 Woodland Drive
Marienville, PA. 16239

LEGAL
MAIL

APR 11 2023

PRIORITY MAIL®

TRACKED
INSURED

UNITED STATES POSTAL SERVICE®

Label 107R, July 2013

For Domestic Use Only